CLAUDE V. MILLS; M. CORSON GILLHAM, Petitioner for Attorney's Fee, v. METROPOLITAN STREET RAILWAY COMPANY; R. J. DUNHAM and FORD S. HARVEY, Receivers, Appellants.

Division One, April 10, 1920.

1. ATTORNEY'S LIEN: Right and Remedy: Procedure. The Attorney's Lien Statute in giving an attorney a lien on his client's cause of action, being constitutional, created a right that did not exist at common law, but failed to provide a remedy, and therefore that the right may not perish the courts devise for its enforcement modes of procedure conformable to those general rules established in our system of jurisprudence for the security of private rights, the mode to be pursued depending somewhat on the facts of each particular case.

2. ————: ————: Action at Law or Suit in Equity. The statute gives an attorney, employed on a percentage basis, a lien on the cause of action of his client, who nevertheless has the absolute right to settle it, in good faith, regardless of the attorney's wishes; and if the settlement is made without fraud or collusion, the cause of action is thereby wiped out, and if the attorney's lien has been disregarded, he is remitted to an independent action against defendant, which may be an independent action at law for the value of the lien of which he has been deprived, or, possibly, if he so elect, a suit in equity to foreclose his lien.

3. ————: Action at Law: Due Process. Notwithstanding the attorney, in order to recover his fee according to contract, proceeded by filing his motion in the case which had been settled, entitling it as that case had been, and notwithstanding the motion asked the court to set aside the entry of dismissal and reinstate the case on the docket and open up the case "for the purpose of this motion," yet if the motion alleged every fact essential for an independent cause of action against defendant in an action at law for the enforcement of his lien and prayed judgment for the value thereof, and defendant voluntarily appeared and answered that he was never plaintiff's attorney in the case, and charged a conspiracy between him and plaintiff to defraud defendant, to which he replied by general denial, and the matter was submitted to the court, evidence was received and argument had, the proceeding was in general conformity to the rules and usages governing the

trial of civil actions at law, and was due process of law, since the real purpose of the motion was not to revive a dead lawsuit, but to establish a monetary judgment for the value of his statutory lien.

4. ———: ———: **Quantum Meruit.** The existence, character and identity of an attorney's lien for services rendered on a percentage basis are derived from his contract of employment; and when he is wrongfully discharged, or the cause of action is settled by his client without his consent, his right to recover depends upon an establishment of the contract, and the suit by the pleadings being one on an express contract he cannot recover as on *quantum meruit* for the value of his services rendered, and a judgment for the reasonable value of the services, as if rendered under an implied contract, is not responsive to a cause of action based on an express contract.

5. ———: ———: **Entitling Suit: General Prayer.** The attorney's remedy for a settlement by defendant with his client, in disregard of his lien and contract of employment, is an independent suit against the defendant, for the value of his statutory lien, and it is not proper to undertake to establish it by filing a motion in the case settled. And, if an action at law, a prayer for general relief is inappropriate and anomalous, but not substantive.

Appeal from Jackson Circuit Court.—*Hon. T. J. Seehorn,* Judge.

REVERSED AND REMANDED.

*Richard J. Higgins* and *Roscoe P. Conkling* for appellants.

(1) The court erred in setting aside the judgment entered of record on October 17, 1917. (a) This was an action at law, and after the final judgment of October 17, 1917, the court was without authority to set aside the judgment for the purpose of permitting the amendment of the motion, the introduction of further evidence, and then to enter a new judgment for the petitioner. The judgment of October 17, 1917, was a final judgment in a law case. The court had authority only to sustain petitioner's motion for a new trial, or to let the judgment of October 17, 1917, stand. The court did neither of these

two things. Akins v. Hicks, 109 Mo. App. 95; State ex rel. v. Horton, 161 Mo. 671; Patrick v. Abeles, 27 Mo. 184; State ex rel. v. Evans, 176 Mo. 310; Walker's Admrs. v. Walker, 25 Mo. 367; Shell v. Mo. Pac. Railroad, 132 Mo. App. 528; Miller v. Railroad, 162 Mo. 433; Wait v. Ry. Co., 204 Mo. 491; R. S. 1909, sec. 2022. (b.) Respondent's own testimony conclusively shows, the jury found, the trial court approved, and the trial court still approves, that the respondent abandoned the cause of action. By his own actions respondent is estopped from asserting or claiming any lien. Mfg. Co. v. Sharples Co., 98 Mo. App. 207; Miller v. Chinn, 203 S. W. 212; Mineral Water Co. v. Fishman, 127 Mo. App. 211; Chouteau v. Iron Works, 94 Mo. 395; Seligman v. Rogers, 113 Mo. 642; Palais du Costume Co. v. Beach, 114 Mo. App. 462; Blanton v. King, 73 Mo. App. 148. (2) The court erred in permitting respondent, after trial, and after judgment for these appellants, to amend his motion by adding a prayer for general relief. (a) There was no warrant or authority in law for such amendment at that time. Sec. 1851, R. S. 1909. (b) The amendment amounted to a departure from the original cause of action declared upon. Scoville v. Glassner, 79 Mo. 449; Pruitt v. Warren, 71 Mo. App. 84; Weissenfals v. Cable, 208 Mo. 515; St. L. v. Wright, 210 Mo. 501; Carter v. Dilley, 167 Mo. 564; Lumpkin v. Collier, 69 Mo. 170. (3) The court erred in permitting any evidence of the value of the services of respondent, because respondent declared upon a contract, and the motion was founded upon the attorney's lien statute. Recovery cannot be had upon the *quantum meruit*. White v. Wright, 16 Mo. App. 551; Fox v. Pullman Co., 16 Mo. App. 127; Houck v. Bridwell, 28 Mo. App. 648; Stanley v. Whitlow, 181 Mo. App. 461; Shoemaker v. Johnson, 200 Mo. App. 209. (4) The court had no jurisdiction. There was no money judgment entered against appellants in the original cause. The final judgment in the original cause was a judgment of dismissal. There was no money judgment in the original cause to which the lien, if established in this proceeding,

could attach itself. This proceeding, to establish a lien, should have been an independent action and not a proceeding by motion in the original cause. Wait v. Ry. Co., 204 Mo. 501; O'Connor v. Transit Co., 198 Mo. 643; Taylor v. Transit Co., 198 Mo. 730. (5) The court erred in setting aside the judgment rendered October 17, 1916, in permitting petitioner to amend his motion, in refusing to recall the jury sworn and impaneled in the cause on October 16, 1917, in permitting petitioner to introduce new and further evidence, thereby depriving these appellants of their property without due process of law, in violation of Section 30, Article II, of the Constitution of Missouri. Jones v. Yore, 142 Mo. 44; State ex inf. v. Shepherd, 177 Mo. 205.

*Hutton, Davis, Nourse & Bell* for respondent.

(1) The court did not err in setting aside its judgment of October 17th, 1917, on its own motion, being the same term at which the judgment was entered. Modern Woodmen v. Angle, 127 Mo. App. 106; Buck v. Buck, 267 Mo. 663. (2) The statutes allowing attorney's liens made no provision for a mode of procedure but our appellate courts have given relief and have provided that the attorneys ought to be deprived of his fee could file a motion in clients case asking that fees be taxed against defendant or that he can file an independent suit. Taylor v. Transit Co., 198 Mo. l. c. 730; Stevens v. Met. St. Ry. Co., 157 Mo. App. 656; Curtis v. Met. St. Ry. Co., 118 Mo. App. 355; Nicola v. American Car & Foundry Co., 185 Mo. App. 285; Wait v. Railroad Co., 204 Mo. 503. (3) It was not obligatory on the trial court to hear evidence on the reasonable services of Gillham and it was not obligatory for the trial court to adopt the evidence that it did hear. The trial court did not grant a new trial but offered to do so if defendants requested it. Respondent respectfully submits that appellants were not deprived of any of their constitutional rights and moves that their appeal be dismissed.

RAGLAND, C.—This is an action based on the Attorney's Lien Statute. M. C. Gillham, hereinafter designated the plaintiff, is, and for a number of years has been, a member of the Kansas City Bar, actively engaged in the practice of law. Some time prior to February 8, 1916, one Mills sustained personal injury through the negligence of defendants while a passenger on their cars. On the last named date he employed plaintiff as his attorney to commence and prosecute a suit for the recovery of his damages. By the contract of employment it was agreed between plaintiff and Mills that plaintiff should have for. his services twenty per cent of any judgment, settlement or compromise obtained or effected, disposing of Mills cause of action. Pursuant to his employment, plaintiff prepared and, on February 10, 1916, filed with the Clerk of the Circuit Court for Jackson County, a petition by which an action was commenced by Mills against these defendants for the recovery of $30,000 as the damages sustained by him on account of their negligent acts. Later plaintiff appeared in the cause for Mills, the plaintiff therein, as his attorney, at the hearings on defendants' demurrer to the petition and on their motion to make the same definte and certain, as well as at the taking of depositions on the part of defendants. He also spent considerable time in the preparation of the case for trial. There is no suggestion of a lack of either diligence or skill in paintiff's conduct of the case. But, apparently, some outside influence operating on the mind of Mills led him to believe that he had made a grievous mistake in not employing a certain other attorney He thereupon employed the other, and at the latter's suggestion Mills wrote plaintiff a letter, in which he in effect stated that at the time he talked to plaintiff (at the hospital) with reference to employing him he, Mills, was not in a condition mentally to make a contract, and that in any event plaintiff was employed merely to file the petition and that he must take no further action, as other counsel had been retained to try the case. Plaintiff construed this letter to mean the Mills had secured another lawyer to conduct

the trial of the cause in court and not as terminating his employement. He continued to accept service of notice to take depositions served by opposing counsel and otherwise continued in active charge of the case. This fact coming to the attention of Mills, on July 31, 1916, he wrote plaintiff a letter, peremptorily directing him to cease meddling with the case and threatening to take the matter before the local bar association, if he did not do so. Plaintiff then awoke to a realization that he had been replaced by another attorney and did nothing further in the case. Later Mills, through the attorney last employed by him, and without the knowledge of plaintiff, effected a settlement of his case, by which he received the sum of $5500, and on November 24, 1916, a stipulation was filed in the cause by which it was agreed that the same should be dismissed at defendant's cost. Judgment was entered in accordance with the stipulation. Just a few days before the settlement was effected, Mills's attorney then in charge of his case wrote plaintiff offering the latter $50 in full compensation for his services therein. Plaintiff not replying, the offer was withdrawn and the settlement proceeded to a consummation without further effort on the part of anyone connected with the case to secure a release of plaintiff's lien on the cause of action, if he had one.

On December 20, 1916, plaintiff filed with the Clerk of the Circuit Court for Jackson County a paper, which he denominated a motion, and which, by its caption and prayer, purported to be in the case of Claude V. Mills, plaintiff, v. The Metropolitan Street Railway Co., R. J. Dunham and Ford Harvey, Receivers, defendants. In this paper plaintiff styled himself a "petitioner." But whatever may be its proper characterization, it is alleged in this pleading that prior to February 8, 1916, one Claude V. Mills, having theretofore sustained injuries through the negligence of defendants while a passenger on their cars, and having a subsisting cause of action for damages for such injuries, on that date employed plaintiff ("your petitioner") as an attorney-at-law to prosecute a suit for the recovery thereof; that it was agreed

between plaintiff and said Mills that for his services in that behalf plaintiff should have twenty per cent of whatever amount was realized on the cause of action, whether by judgment, compromise or settlement; that plaintiff, pursuant to his employment, filed a petition for Mills, thereby commencing suit on the latter's cause of action against the railway company and its receivers; that, while he was engaged in matters preliminary to a trial of the cause, Mills, without plaintiff's knowledge or consent, settled the case for $5500 and entered into an agreement with defendants therein for a dismissal of the cause, which was accordingly done; that the defendants in paying over to Mills $5500 in full settlement of the cause of action, without plaintiff's knowledge or consent, deprived plaintiff of his fee of twenty per cent thereof "and of his lien upon said cause of action allowed by the statutes of Missouri." The prayer is as follows:

"Now, therefore, comes your petitioner and moves the court to set aside the entry of dismissal entered in this cause on the 24th day of November, 1916, and to open and reinstate said cause upon the docket of said court, for the purposes of this motion, for the reasons hereinbefore stated, and to grant your petitioner judgment against defendants for twenty per cent of said amount as paid plaintiff by defendants for settlement and compromise of this cause, or eleven hundred dollars, together with interest at six per cent from November 24, 1916."

The record does not disclose whether, upon the filing of this paper, a summons issued or whether any notice thereof was served upon the defendants. In any event, they appeared at the same term (November Term, 1916) of the court and filed an answer in which it is alleged that plaintiff was never employed by Mills, and that he was never at any time Mills's attorney in the case which they settled with Mills. It was further averred in the answer that to grant plaintiff the relief prayed by him would be to deprive defendants of their property without due process of law in violation of both

State and Federal constitutions, and would deprive defendants of the right of trial by jury as guaranteed by the Constitution of the State of Missouri. At the September Term, 1917, of the court the defendants filed an amended answer. In this pleading they omitted any averment that the proceeding would deprive them of the right of trial by jury. On the contrary they alleged that the action was an equitable one, and, after charging Mills, Gillham and others with having entered into a conspiracy to extort more money from them, asked that, in the event plaintiff, Gillham, was given a judgment against them, they be awarded a judgment for the same amount against Mills. In other respects the amended answer was similar to the one first filed. Plaintiff filed a general denial by way of reply.

The cause in due course came to trial October 29th, during the September term, 1917. Acting apparently on the suggestion in defendants' amended answer, and without protest from either party so far as the record discloses, the court proceeded with the trial of the cause as though it were a suit in equity. However, it concluded to take the opinion of a jury on certain specific questions of fact therein involved and a jury was accordingly impaneled. Evidence *pro* and *con* was heard at length on the issues of whether plaintiff had been employed by Mills and whether plaintiff, by his acts and conduct after the receipt of Mills's letters, abandoned the case and relinquished his claim of employment therein. Special issues were framed and submitted to the jury. Among others, more or less collateral to this one, they found that Mills employed plaintiff to bring the suit in question for a contingent fee of twenty per cent of whatever was realized by judgment or settlement. This specific question was also submitted to them:

"Did the petitioner, Gillham, by his acts, abandon the cause of action and cease to act therein?

"By 'abandon,' as used herein, is meant to give up a thing absolutely. In this connection, you are instruct-

ed that abandonment need not be proved directly, but may be inferred by acts of commission or omission which necessarily point to actual abandonment.''

To which the jury answered, ''Yes.'' The court approved and adopted the findings of the jury and entered judgment thereon for defendants.

Later during the same term when counsel for both parties were present, the court announced that, if the ''petitioner'' desired it, he would set aside the judgment and permit the ''petitioner'' to introduce evidence of the reasonable value of his services. The plaintiff indicated that he would avail himself of the offer. Thereupon, the court set aside the judgment of its own motion. At its further suggestion the plaintiff amended his motion or petition by adding a prayer for general relief. Defendants obtained leave to amend their answer, which they did by *addenda*. The added matter was principally a vehement protest against the conversion of the cause of action from one on express contract to one on *quantum meruit*, averring that the court's action in permitting the same to be done was not only a departure, but deprived defendants of their property without due process of law and deprived them of their constitutional right to a jury trial. After the filing of this second amended answer, the court offered to call another jury to try all the issues. The defendants objected to calling another jury; they claimed that they wanted the one recalled that had rendered the advisory verdict and been discharged. This the court refused to do. After hearing additional evidence as to the reasonable value of plaintiff's services, the court again approved and adopted the findings of the jury, assessed plaintiff's damages at $750 and rendered judgment in his favor and against defendants for that sum. From that judgment defendants appeal.

The principal grounds on which appellants rely for a reversal are: (1) that by the proceeding and the judgment therein they are deprived of their property without due process of law in violation of their consti-

tutional rights, and included in this is their contention
that they were denied the right to a jury trial, and
(2) that the judgment, under the pleadings and on the
facts found by the court, was unauthorized.

I.   The constitutionality of the Attorney's Lien
Statute itself, on the grounds presented, is no longer an
open question, but has passed into the realm of things
adjudged.   [Whitecotton v. Railroad, 250 Mo. 624, 628.]

Procedure.      The only question that may be considered,
therefore, with reference to the infringement
of appellants' constitutional rights in the respect con-
tended for by them, is whether the mode of procedure
followed by the trial court measured up to the require-
ments of "due process of law." Plaintiff in his motion
or petition does not allege the service of a notice on
defendant as provided by Section 965, Revised Statutes
1909, so that his right of recovery, if any, against de-
fendants in this proceeding rests exclusively on Section
964, and whatever may be said hereafter in the course
of this opinion with respect to the statute will have spe-
cific reference to the last named section.   The statute
in giving an attorney a lien on his client's cause of
action created a right that did not exist at common
law, but though creating a new right, it fails to provide
a remedy.   [Young v. Renshaw, 102 Mo. App. 173.]
Under such circumstances, that the right might not
perish for the want of a remedy, the courts have been
assiduous in devising for its enforcement modes of pro-
cedure conformable to "those general rules established
in our system of jurisprudence for the security of pri-
vate rights."   [Wait v. Railroad, 204 Mo. 491.]   The
kind of procedure sanctioned depends somewhat on the
facts of each particular case.   If the cause of action on
which the attorney has a lien has been merged into
a judgment, certain proceedings for enforcing the lien
are allowable; if the cause of action is settled or com-
promised before judgment, certain others are followed.
In the instant case a settlement was effected by the
client before judgment, and we are not concerned, there-

fore, as to the proper procedure in cases involving a different situation.

There are precedents for holding that, where a settlement is collusively made for the purpose of cheating the attorney, he may disregard the settlement and continue the prosecution of the cause of action in the client's name, and, if the facts permit, recover to the extent of his lien. In such case the suit continues to be on the client's cause of action; it is not a mere summary proceeding therein by motion to assess attorney's fees. In the absence of fraud or collusion, however, a settlement made by the client extinguishes the cause of action, and, being wiped out, it ceases to be the subject of prosecution. This is so because the cause of action is the property of the client and not the attorney, and he has an absolute right to make such setllement or adjustment of it, in good faith, as he thinks best regardless of the wishes of his attorney. [Curtis v. Railway, 118 Mo. App. 341; Wait v. Railroad, supra.] The lien is subject to this right, and, if on a percentage basis, is liquidated by the exercise thereof. After an honest settlement made by the client, his cause of action being thereby determined, the attorney, if his lien has been disregarded, is of necessity remitted to an independent action against the defendants. [Yonge v. Transit Co., 109 Mo. App. 235, 246.] Such independent action may be one at law for the value of the lien of which he is deforced, corresponding to the common law action of trespass on the case (Taylor v. Transit Co., 198 Mo. 715, 730); or possibly, if he so elected, the attorney may instead bring a suit in equity to foreclose his lien. In Fischer-Hanson v. Railroad, 173 N. Y. 492, 1. c. 502, a leading case construing a statute very similar to ours, it is said:

"A lien upon a claim or a cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the

rights of the latter and must stand the consequences. We think that the plaintiff had a lien upon the sum which the defendant agreed to pay to extinguish the cause of action, and that the law will not permit it to say that it has nothing in its hands to satisfy it. The lien was not affected by the adjustment, but leaped from the extinguished cause of action to the amount agreed upon in settlement.

"The remedy provided by the Code by means of a petition is not exclusive, but cumulative, for a court of equity has always had power to ascertain and enforce liens. We have endeavored to establish that the plaintiff's lien was tranferred from the cause of action to the fund into which the claim was converted by the action of the parties, and hence within familiar principles a court of equity has power to enforce that lien in an action brought for that purpose. Actions to establish and enforce liens are among those most familiar to equity jurisprudence. Even if the relief ultimately granted is in the form of a money judgment; still that will be possible only through the exercise of equitable jurisdiction in ascertaining the lien and determining its amount. A money judgment may then follow, as a foreclosure is unnecessary when the subject of the lien has already been converted into money."

Having preliminarily pointed out the nature of the right conferred by the statute and the remedies for its enforcement that have been sanctioned by the courts. we come to a consideration of the essential nature of the proceeding employed in the instant case—of whether it was "a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights." In the record it is designated as a motion for the assessment of attorney's fees in the case of "Claude V. Mills, plaintiff, 'v. The Metropolitan Street Railway Co., R. J. Dunham and Ford Harvey, Receivers, defendants." But such nomenclature does not truly char-

acterize it. The first pleading filed by Gillham is entitled as though in the case of Mills against the receivers, but it alleges every fact essential for the statement of an independent cause of action against defendants in an action at law for the deforcement of his lien. It prays for judgment against defendants for the value thereof. The defendants waived the service of notice, voluntarily appeared and answered. The answer denies that Gillham was ever employed by Mills or that he at any time represented Mills as his attorney in the controversy between Mills and the defendants. It alleges a conspiracy between Gillham and Mills to defraud defendants. To this answer Gillham filed a reply, denying generally its allegation. On the issues thus joined a trial was had, at which evidence was received pro and con, counsel were heard in argument, the cause was duly submitted to the court and a judgment rendered—all in general conformity to the rules and usages observed in the trial of civil actions in this State. The prayer in Gillham's first pleading asked the court to set aside the entry of dismissal in the case of Mills against the receivers and to open up and reinstate that cause on the docket "for the purposes of this motion," but no reason was suggested for the necessity or propriety of reinstating the cause, no purpose could in fact have been subserved thereby, and the request was properly ignored, both by the court and the parties. The judgment rendered was a money judgment against the defendants and nothing more. The court did not attempt to do what it had no power to do *on Gillham's motion,* to-wit, resurrect the dead lawsuit. There is no substance in appellants' contention that the judgment deprives them of their property without due process of law, unless it is because they were denied a jury trial. But this right they unquestionably waived. [Sprague v. Carroll, 188 S. W. 63; Kansas City v. Woerishoeffer, 249 Mo. 1.]

II. Appellants' next insistence is that the judgment is not responsive to the pleadings, in that, an express

contract is pleaded and the recovery is on *quantum meruit*. The court first gave judgment for defendants. Such judgment was evidently superinduced by the affirmative finding of this issue of fact: "Did the petitioner, Gillham, abandon the cause of action and cease to act therein? By abandon, as used herein is meant to give up a thing absolutely." It could be implied from this finding, considered abstractly, that Gillham voluntarily forsook the duties enjoined upon him by his contract with Mills without the latter's consent. In such event, he would not be entitled to recover even for the service he did render. [Blanton v. King, 73 Mo. App. 148.] But from the court's subsequent action it is clear that it did not find that Gillham had abandoned his contract in this sense. Indeed, it would be difficult to reconcile such a finding with the facts in proof. Without contradiction, the evidence shows that Gillham instituted the suit and was proceeding with its prosecution in the usual way until he was stopped by Mills's letter. On being thus summarily discharged, Gillham had the option of waiting until the cause of action was liquidated by judgment or settlement and then suing for his fee according to the contract (Reynolds v. Clark Co., 162 Mo. 680; Kersey v. Garton, 77 Mo. 645), or he could treat the contract as rescinded and sue for the reasonable value of his services (Dempsey v. Dorrance, 151 Mo. App. 429). While it is not quite obvious what Gillham could have done by way of protest when Mills discharged him and threatened him with the Bar Association if he did not cease interfering in the case, the trial court must have found that by "acts of . . . omission" Gillham acquiesced in his discharge, that the contract thereby became rescinded, and that as a result Gillham became entitled, on an implied contract, to recover for the reasonable value of the services he had actually rendered. The law has been definitely written in this State that in an action on an express contract a recovery cannot be had as on a *quantum meruit*. [Shoemaker v. Johnson, 200 Mo. App. 209, and cases cited.] While this suit, strictly

*Quantum Meruit.*

speaking, is to recover damages for the deforcement of an attorney's lien, the same reasons for requiring the proof to support the allegations of the pleading and the relief granted to conform thereto obtain as in suits on contract. It is true that the lien is the mere right to have the proceeds of the cause of action impressed with the payment of the compensation provided for by the contract, and it is the wrong involved in depriving plaintiff of this right that is the gravamen of the action, but the existence, character and identity of the lien are derived from the contract. To establish the lien, the contract giving it birth must be specifically pleaded and proved, so that actions of this kind, while technically not on contract, are such in certain essential respects. As there can be no lien in favor of the attorney unless there be a contract debt due him from the client, in a suit by the attorney against defendants for settling with the client in disregard of his claimed lien, the defendants are entitled to defend on the same grounds that the client could were he sued by the attorney for the alleged fees. If, therefore, they deny the existence of the alleged contract of employment pleaded, and consequently the existence of the alleged lien thereof, on the issue thus joined of contract or no contract, lien or no lien, they are no more called upon to meet proof of any other contract (and lien) than the one averred in the petition than the client himself would be were he the defendant. In this case an express contract was declared upon as the basis of the lien. The prayer for general relief, added at the court's suggestion, did not change the character of either the pleading or the action. The judgment being for the value of the lien of an implied contract, effects a recovery on a cause of action not pleaded, and for that reason will have to be reversed.

III. As heretofore pointed out, the only remedy This proceeding is essentially such an action, although available to the plaintiff, on the facts disclosed by the record, was an independent action against the defendants.

<div style="float:left">Title and<br>Prayer.</div>

the plaintiff has seen fit to disguise it by filing a petition with an alien title and an anomolous prayer. To now remand the cause on that account, would be to sacrifice substance to form. The plaintiff may, if so advised, amend his petition by properly entitling the cause and by striking out the extraneous portion of the prayer.

The judgment is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. *Brown* and *Small, CC.,* consur.

PER CURIAM:—The foregoing opinion by RAGLAND, C., is adopted as the opinion of the court. All the judges concur except *Woodson, J.,* absent.