MARY CLARE ALLEN, Appellant, v. GREEN FEWEL, CHARLES WALTER FEWEL, MARY S. WALLACE, MASON FEWEL, HUGH M. FEWEL, BELLE KENNEDY, FLOYD FEWEL, LEE ANDERSON, INA MIDDLECOFF, ALTA KINYON, FYKE F. FEWEL, CONNOR O. FEWEL and HUGH M. FEWEL, Administrator of the Estate of RICHARD B. FEWEL. —87 S. W. (2d) 142.

Division Two, November 5, 1935.

*De Armond & Maxey* for appellant.

956

*C. A. Calvird, Jr.* and *Jas. A. Parks* for respondents (except heirs of C. O. Fewel).

WESTHUES, C.—Appellant, plaintiff below, filed suit May 28, 1932, in the Henry County Circuit Court, against respondents, defendants below, seeking to have herself declared to be an adopted daughter and sole heir of Dr. Richard B. Fewel, deceased. The property involved consisted of real estate and personal property, mostly Government bonds, valued in excess of $15,000. Plaintiff, by a contract in writing, employed two attorneys for the purpose of bringing her suit. After the petition had been pending more than a year the attorneys compromised the case. The terms of the settlement were that a decree should be entered, by the court, declaring plaintiff not to be the sole heir of Dr. Fewel and that plaintiff should have a judgment for $2050, for services rendered while she lived with Dr. Fewel and his wife. The judgment, by its terms, did not affect plaintiff's right to inherit her share as a niece of Dr. Fewel. Within four days after the judgment had been entered, as per the settlement mentioned, plaintiff filed a motion for a new trial and to set aside the judgment. The motion reads as follows:

"Now on this the 6th day of July, 1933, comes Mary Clare Allen, plaintiff, in the above-entitled cause and represents to the court that while she had said suit filed and instituted as above shown by Higdon and Kennedy of Sedalia, Mo., that she had no knowledge whatever that the case would be called Saturday, July 1, 1933; that while she knew the case was on the docket of the Henry County Circuit Court for hearing, she had distinctly and emphatically informed her said attorneys that she could not be ready for trial at said term, yet it

was clearly understood that the case would be continued until the September Term, 1933, and she was so notified and informed and no preparation was made for trial after such notice; that the court practically adjourned the term of Henry County Circuit Court and went into the regular session of the Circuit Court in St. Clair County and only returned here on Thursday, July 29th to try a special case transferred from St. Clair County to Henry County and there was no notice that the above-entitled case would even be considered. Without her presence, without her knowledge and without her consent the case was taken up in some form, fashion or manner on Saturday, July 1, 1933, and heard. There were no witnesses as to her services or the value thereof or any witnesses so far as she knows on the adoption issue. That on Monday, July 3rd, she received a letter from said attorneys informing her of the rendition of the judgment and enclosing a draft for $1,025, which draft she has not cashed and does not intend to do so, copy of which letter is herein made. . . .

"This plaintiff asserts that $2050 was wholly inadequate for her services and is a mere pittance therefor; and that she has ample evidence to sustain the issue of adoption; that sister was ready and willing to give her deposition in California upon issue of adoption as well as services rendered and she had several other witnesses. That this trial was a surprise and worked a great hardship and does her a gross injustice. That she never authorized her attorneys at any time or place to compromise the case; and never authorized them to accept $2050 for settlement and had no knowledge that they ever considered such a proposition or that the same was under consideration; and had no knowledge that a trial was contemplated July 1st or any time prior to the September Term, 1933; that she resided in Kansas City July 1st and her attorney knew where she was, her address, street and number; that sometime the last of April or first of May, 1933, they, her attorneys, were in Kansas City to see her on this case and submitted the $2000 proposition and she rejected the same and they had full knowledge then and there that she would not entertain such a proposition.

"Wherefore the premises fully considered she prays the court to hold said trial for naught, to set aside the judgment, reinstate the case on the docket and set it down for trial within a reasonable date and notify the defendants and hear and determine the case on its merits and give her a day in court and time for preparation for all and such other orders as may seem just and proper to preserve her rights and protect her interests."

The trial court, after hearing evidence in support of the allegations in the motion, overruled the same, whereupon plaintiff filed a motion for rehearing, which was likewise overruled. Thereafter plaintiff appealed.

We have set forth in full the motion to set aside the judgment.

From an examination of the motion it will be seen that the only grounds stated for setting aside the judgment are: First, that the attorneys did not have authority to compromise plaintiff's case; and second, that the trial court did not hear any evidence upon which to base its judgment. Plaintiff has briefed other points, but we will confine our discussion to the two assignments made in the motion.

The facts leading up to the question now before us, briefly stated, are: Dr. Fewel died intestate, leaving as his heirs four brothers and one sister living; three children of a deceased brother, named Henry; and four children of a deceased brother, named Connor O. Fewel. Plaintiff was a child of Connor O. Fewel. The other heirs referred to were made defendants. Plaintiff, as a basis for her claim, stated in her petition that Dr. Fewel had agreed in the year 1893, when plaintiff was ten years old, that if she would live with Dr. Fewel and his wife until she became eighteen years of age they would adopt her as their child and leave her all their property at their death; that she fully complied with her part of the contract and lived with Dr. Fewel and his wife, as their daughter, until she reached the age of twenty-two years. It was also alleged that Dr. Fewel had executed a will leaving all of his property to plaintiff. Plaintiff also stated in her petition that no deed of adoption was ever executed.

Plaintiff entered into a contract with R. A. Higdon and D. E. Kennedy to prosecute her claim. The terms of this contract are not material to the issue now before us except as to the authority of the attorneys to compromise plaintiff's case. A contract was introduced containing the following clause:

"I agree to give all friendly advice and aid in obtaining witnesses and agree to any settlement my said attorneys may obtain that in their judgment seems fair and right."

Plaintiff testified the words "any settlement" were stricken from the contract. R. A. Higdon, one of the attorneys, died prior to the trial of the case. Judge D. E. Kennedy testified that the words "any settlement" had not been stricken from the contract. Judge Kennedy further testified that after this contract was executed the attorneys made a number of trips to various places, including Montrose, Missouri, for the purpose of seeking evidence to sustain plaintiff's claim. Numerous people were interviewed in an attempt to obtain witnesses who knew of facts favorable to plaintiff's case. Judge Kennedy testified in part as follows, as shown by appellant's abstract of the record:

"We spent a whole day in Montrose in an effort to secure evidence as to the relation between Mrs. Allen and Dr. Fewel. We interviewed them all, but we found no people anywhere that had ever known, or knew whatever, about the contract between Dr. Fewel and his brother's wife. We saw Mrs. Allen at dinner the first trip to Montrose, and told her what success we had had; there were some people at Montrose who were friendly and some who were un-

friendly. We gave her all the information in regard to the character of the evidence we had obtained, and the effect of it. We made two other trips to Montrose, paid our own expenses; with same issue in view we made at least five trips to Clinton to confer with Mrs. Allen and other people; we went to see some people out south of town here, I believe; I can't recall their names; we went to Kansas City to see Mr. Bruce Wilson, and during the summer of 1932, I briefed this case completely up on every case relating to adoption. Every case that had been reported by the appellate courts, from the case of—I can't recall the name now. 1 briefed what all of the cases held down to the last case reported in the Southwestern, as to what the case held, giving the language of the decision, so the court could decide. Mrs. Allen knew that; I talked to her, too, about the law in the case—what the courts had decided, and what was necessary to establish an oral contract to adopt.''

Plaintiff's attorneys had prepared the case and were ready for trial at the January, 1933, term of the Henry County Circuit Court. We judge from the evidence, on the motion to set aside the judgment, that no substantial evidence was located to establish the fact, as alleged in the petition, that Dr. Fewel had executed a will leaving his property to plaintiff. Plaintiff and her attorneys relied most strongly upon the adoption theory of their case. On this issue there was evidence pro and con. The defendants were ready for trial and insisted that the case be tried. Plaintiff and her attorneys seemed to be in accord that it was not safe to go to trial without the presence of plaintiff's sister, Ina Fewel Middlecoff, who lived in the State of California. Mrs. Middlecoff had written plaintiff's attorneys that she would testify for plaintiff. She disclosed, by her letters to plaintiff's attorneys, that she personally knew the details of the contract, whereby Dr. Fewel and his wife had agreed to take plaintiff as their own daughter and to make her their sole heir, on condition that plaintiff would live with them until she reached the age of eighteen years. Mrs. Middlecoff did not come to testify at the January Term of court and the case was postponed at plaintiff's request.

Plaintiff's attorneys in preparing for trial for the January Term had written Mrs. Middlecoff urging her to be present, or if that was impossible that her deposition be taken. She was also requested to give plaintiff's attorneys details of the execution of the alleged will and its contents. Some time prior to the January Term of court plaintiff wrote to her sister in California not to come for the trial. This plaintiff admitted while on the witness stand. It appears that thereafter plaintiff's attorneys were unable to get any further information from Mrs. Middlecoff and were unable to obtain her consent to give her deposition. The next term of the Henry County Circuit Court was to be held in the month of May. Judge Kennedy testified as follows:

''When the January Term of court came on, the case was continued

at her request. I saw Mrs. Allen no more, from about that date in December until the first day of June. I was notified by Mr. Parks and by Mr. Calvird that they were going to insist on trial at the May Term of court. Their clients were getting urgent, and that they would have to try it. That the court would be in session all during June and a part of July; that they had a proposition to submit; that they would give us $2000 compensation for our services. I had inquired into the services Mrs. Allen had rendered to Dr. Fewel and his wife during the eight or nine years while in their home."

About June 1, plaintiff's attorneys made a trip to Kansas City, Missouri, to see her with reference to the suit. They informed her that the defendants had proposed to settle the case for the sum of $2000. Judge Kennedy testified that the principal objection plaintiff made to the settlement was that she did not want to settle through Mr. Parks, one of defendants' lawyers. Plaintiff's attorneys at this time did not come to any definite understanding with her, which seemed to be quite frequently the case, but they informed her that they would accept the settlement made by defendants. The attorneys, on July 1, 1933, appeared in court and orally presented the matter to the trial court, whereupon a judgment was entered in accordance with the settlement made between plaintiff's attorneys and the defendants. Judge Kennedy testified as follows:

"We settled this case in good faith, because we thought we had a right to do it under the law and under her contract, made at her own dictation. I know as a matter of fact she wouldn't get Mrs. Middlecoff so we wouldn't try the case; because she told us repeatedly that she wouldn't consent to our taking her deposition, and she apprised her sister not to have anything to do with us."

The trial court in overruling plaintiff's motion to set aside the judgment necessarily found that plaintiff had authorized her attorneys to compromise the case. This was a disputed fact at the hearing on the motion. We are of the opinion that the trial court's finding was supported by a preponderance of the evidence. A contract, admittedly signed by plaintiff, containing such authority, was introduced in evidence. When an attorney is authorized, by his client, to compromise a lawsuit the attorney has the legal right to do so and the client is bound thereby unless the settlement is grossly unfair. [6 C. J. 661; Black v. Rogers, 75 Mo. 441.]

A motion to vacate a judgment is addressed to the sound discretion of the trial court. [34 C. J. 364, sec. 580, and numerous cases there cited. See, also, Town of Hopkinton v. Sturtevant (Mass.), 189 N. E. 107; Scott v. Union Mut. Casualty Co. (Iowa), 252 N. W. 85; State ex rel. v. Edwards, 315 Mo. 209, 1. c. 214, 286 S. W. 25.] The exercise of discretion by the trial court can only be interfered with when it is apparent that it has been abused. [Goodwin v. Kochititzky, 3 S. W. (2d) 1051.]

Ordinarily judgments by default, or judgments entered after

the issues have been made up and a party fails to appear for trial, are not set aside unless it can be shown that the neglect to appear was excusable. In this case plaintiff's attorneys were very diligent in their attendance at court and in the preparation of the case. They did all within their power to have the case tried at the January, 1933, term of court. It was the deliberate act of plaintiff in advising her sister, a material witness in the case, not to appear at the trial or to give her deposition that caused the case to be postponed. Had this fact been known to the trial court at that time the case would not in all probability have been continued at her request. Legally she was not entitled to any continuance. If plaintiff was dissatisfied with her attorneys she had the legal right to discharge them and employ other counsel. [6 C. J. 676, sec. 193.] [3] No showing was made that the attorneys had not faithfully lived up to their contract or that they were negligent in handling her case, so if plaintiff had in mind to employ other counsel to try her case she should have done so promptly and not trifled with the court, her own attorneys and the defendants. Plaintiff's own evidence disclosed that she deliberately, as early as December, 1932, interfered with the preparation of the case and that she did not want it to come to trial. Defendants were entitled to a trial at the January Term and also at the May Term. Plaintiff was not in a position to ask for a continuance at the May Term because of the absence of the material witness, when the witness' absence was caused by plaintiff's own act. A litigant is charged with the duty to exercise due diligence in the preparation of his case. Note what was said by the Supreme Court of South Carolina in the case of Detroit Fidelity & Surety Co. v. Foster, 169 S. E. 871, l. c. 879 (3):

"In this connection we quote the following from 15 R. C. L., page 709: 'It seems, however, that a party may be held excusable for relying upon the diligence of counsel, who has been neglectful, only when it appears that he himself has not been neglectful, but has given all proper attention to the litigation.'

"In this connection we also quote the following from the case of Gaster v. Thomas, 188 N. C. 346, 124 S. E. 609, 610: 'This Court has held that, "when a man has a case in court, the best thing he can do is to attend to it." . . . It has also been held that a person having a suit in court "shall give it that amount of attention which a man of ordinary prudence usually gives to his important business." '

"In our opinion, the surety company, petitioner herein, has not complied with this salutary rule, and, independent of whether it received information that Mr. Tobias was no longer handling the case, the surety company has failed to show that it manifested the care and gave to the case the attention required under the circumstances, which a person of ordinary prudence usually gives his important business. We do not see how the petitioner can plead surprise, when,

according to its own showing, it took no steps in the case and made no inquiry concerning its status from the time it returned to Mr. Tobias the papers above mentioned, in March, 1930, until after judgment was obtained against it in April, 1932. Its negligence, in our opinion, was inexcusable.''

In 34 Corpus Juris, page 305, we read:

''A party seeking relief against a judgment on the ground of excusable negligence must clear himself of the imputation of want of due diligence; he cannot have relief if the taking of the judgment appears to have been due to his own carelessness, slothfulness, or indifference to his own rights.''

In this case plaintiff was more than negligent. Had defendants asked the court, at the January Term or at the June Term, to try the case or dismiss plaintiff's cause of action for want of prosecution, the court would have been authorized so to do on the showing that plaintiff had requested her principal witness not to appear.

Under these circumstances it cannot be said that the trial court abused its discretion in refusing to set aside the judgment. There was no showing made that plaintiff would have likely obtained a better result had the case been tried on its merits. We cannot say, as a matter of law, that the settlement was not reasonable. Neither can it be said that plaintiff did not fare well under the circumstances as they were disclosed to the trial court.

The next point urged, as a ground for setting aside the judgment, that no evidence was introduced as a basis for entering a decree against plaintiff on the adoption issue, is without merit. After issues have been joined a judgment may be entered by the trial court, based upon an agreement of the parties. A court is not bound in such cases to hear evidence. [Mains v. Des Moines Natl. Bank, 113 Iowa, 395, 85 N. W. 758, l. c. 761 (4); Winton Motor Carriage Co. v. Blomberg, 84 Wash. 451, 147 Pac. 21, l. c. 23 (1-3).]

The order of the trial court, refusing to set aside the judgment, is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.