The PLAZA SHOE STORE, INC., et al., Appellants,

v.

HERMEL, INC., et al., Defendants,

Greene, Cassity, Carnahan, Freemont & Greene, Movants-Respondents.

No. 62623.

Supreme Court of Missouri, En Banc.

July 6, 1982.

Rehearing Denied Aug. 2, 1982.

Glenn McCann, Kansas City, for appellants.

Andrew Bennett, Bruce E. Himmelreich, Springfield, for movants-respondents.

MORGAN, Judge.

The appellants, Plaza Shoe Store, et al., brought the underlying suit against Hermel, Inc., apparently for alleged negligence

in the design and construction of a building which appellants leased. This action was eventually settled with appellants receiving approximately $58,000, which was placed in escrow by the court. Greene, Cassity, Carnahan, Freemont & Greene, respondents, had been employed originally by appellants under a contingent fee contract to handle the action against Hermel, Inc., but they had been discharged prior to any judgment or settlement. Respondents filed their Notice of Attorneys' Lien, and then moved the court to distribute a certain amount of the funds in connection therewith. The case at bar involves the trial, held without a jury, on the attorneys' lien issue.

The facts necessary for resolution of this case were ably set out in a detailed "findings of fact" by the Hon. J. Powell. The findings, without benefit of quotation marks, are:

1. Plaintiffs and movants entered into a contingent fee contract whereby plaintiffs were to pay movants one-third (⅓) of any and all amounts received by way of settlement in the above-captioned law suit, plus all out-of-pocket expenses.

2. At the time movants received this case, it had minimal settlement value for the following reasons:

a. The named plaintiff was neither the occupant nor the tenant of the premise and had sustained no damages.

b. The Statute of Limitations was about to lapse as to the Plaza Mall, Inc., the proper party of this action, and defendant was aware the wrong party was named as plaintiff.

c. Plaintiff had withheld rents without placing same into escrow, and a Motion for Summary Judgment was pending wherein defendants allege breach of the lease and sought termination of same.

d. The lease in question specifically prohibited recovery for damaged merchandise due to negligence on the part of defendant Hermel, Inc.

e. No offers of settlement or compromise had been made prior to movants' entry into this case.

3. The time expended and charges assessed by the various attorneys for movants in this case were as follows:

| Attorney | Time (Hours) | In Office Charges Per Hour | Out Office Charges Per Hour |
|---|---|---|---|
| Douglas W. Greene | 115–¾ (per stipulation) | $50.00 | $60.00 |
| J. Douglas Cassity | 40 | 40.00 | 50.00 |
| James P. Ferguson | 158–¾ | 40.00 | 40.00 |
| Robert W. Freeman | 2 | 40.00 | 40.00 |
| Douglas W. Greene III | 10–¾ | 40.00 | 40.00 |
| John M. Carnaham III | ¼ | 40.00 | 40.00 |
| William D. Shepard | 6 | 40.00 | 40.00 |

4. This case was a very complex case involving numerous issues, and expenditures of time and charges as set out above were reasonable.

5. Movants provided excellent representation to plaintiffs and obtained good results in the following respects:

a. Movants took a three-year-old case with no settlement offers and a total prayer for damages of $43,441.40 and obtained an offer of settlement of $50,000.00 cash, plus the possibility of a reduction of rent for the remaining fifteen years on plaintiffs' lease with defendant.

b. Movants amended the original petition to add the proper plaintiffs who actually suffered the damages set out in the original petition.

c. Movants conducted extensive discovery which disclosed knowledge on the part of the architect and builder of the Battlefield Mall that a dangerous condition existed, but that said architect and builder failed to take steps to correct same.

d. Movants added as defendants the architect and builder of said Battlefield Mall and obtained contributions from them to the final settlement in this case.

6. Movants received and conveyed to plaintiffs offers of $25,000.00, $32,500.00, and $47,500.00, but in each instance advised plaintiffs to refuse same.

7. Movants received an offer of settlement from defendants for a $50,000.00 cash payment plus a possibility of a reduction of rent in the remaining fifteen years on plaintiffs' lease with defendant Hermel, Inc.

8. Movants relayed that offer of $50,000.00 cash plus a possibility of a reduction of rent payments to plaintiffs and recommended the same be accepted.

9. Plaintiffs, upon being advised of said offer, accused movants of being crooks and selling them out to defendants. Said allegations by plaintiffs were unfounded and without merit.

10. Upon being accused by plaintiffs of being crooks and selling plaintiffs out to defendants, movants could no longer adequately represent plaintiffs and terminated their employment contract with plaintiffs.

11. Movants duly filed notice of attorneys' lien and subsequently entered into a stipulation with plaintiffs agreeing movants would release all papers to plaintiffs and no waiver of attorneys' lien would be construed or raised by plaintiffs.

12. On October 22, 1976, movants submitted a bill to plaintiffs seeking a fee of $16,470.00, plus costs. The Memorandum of Agreement, which is movants' Exhibit 13, and the lien filed in this cause, was based upon a fee of $16,470.00, plus costs. Said amount does not represent one-third of $50,000.00, and movants now seek $16,666.66, plus out-of-pocket expense. The court finds that movants are committed to the original amount claimed as a fee, *i.e.,* $16,470.00.

13. The court finds that movants charged plaintiffs for costs and expenses in the amount of $1,258.07. The court further finds that movants did not credit plaintiffs with two payments of $116.55 as shown by plaintiff's evidence. The court further finds that one of the out-of-pocket expenses is investigator fees totaling $252.12. Movants were unable to produce the name of such investigator, nor did they produce any time slips of such investigator. The court concludes that such expense is not supported by the evidence.

14. The court finds that movants are entitled to a fee of $16,470.00, plus out-of-pocket expense of $772.85, or a total of $17,242.85.

15. In the event it shall be determined that this court erred in upholding the contingency fee contract, the court finds from the evidence that the reasonable value of the services rendered by the attorneys is: Ferguson, $6,390.00; Greene, $5,787.50; Cassity, $1,600.00; Others, $640.00; or $14,417.50.

All hours other than the hours of attorney Greene have been computed at $40.00 per hour. Attorney Greene's 115¾ hours has been figured at $50.00 per hour. Therefore, a judgment based upon reasonable value of services rendered would be $15,190.35, which includes the out-of-pocket expenses heretofore found to be proper.

This case comes before us upon transfer from the Court of Appeals, Southern District, with an opportunity to consider again the proper recovery to be made available to an attorney discharged without cause by a client after legal services have been rendered pursuant to a contingent fee contract but before judgment or settlement has been reached. Prior decisions in this state have held that an attorney may treat the contract as rescinded and sue for the reasonable value of services rendered until the time of discharge; or, at his or her option treat the cause of action as liquidated by reduc-

tion to judgment (or settlement) and proceed upon the contingent fee contract. *Barthels v. Garrels*, 206 Mo.App. 199, 227 S.W. 910 (1920); *Mills v. Metropolitan St. Ry. Co.*, 282 Mo. 118, 221 S.W. 1 (1920); *In re Thomasson's Estate*, 346 Mo. 911, 144 S.W.2d 79 (Mo.1940); *In re Downs*, 363 S.W.2d 679 (Mo.1963); and *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316 (Mo. banc 1979). Appellants invite this court to review the above holdings, taking into account the modern trend toward limiting the discharged attorney's recovery to the *reasonable value* of services rendered up to the time of discharge.

■ Before examining the "limitation of recovery" question, we first attend to appellants' first point of error, *i.e.*, that the trial court lacked jurisdiction over the pending case because movants-respondents (the attorneys) proceeded by motion in the original case, instead of by an independent action against the former clients. Appellants assert that the only manner by which an attorney may enforce his lien, when discharged prior to judgment or settlement, is by an independent proceeding.

While Missouri's version of the attorney lien statute does not provide a remedy to enforce the lien, "the courts will not suffer it to perish from such failure." *Nelson v. Massman Const. Co.*, 120 S.W.2d 77, 87 (Mo. App.1938), modified on other grounds, *sub nom., State ex rel. Massman Const. Co. v. Shain*, 344 Mo. 1103, 130 S.W.2d 491 (1939) (citing *Curtis v. Metropolitan Street R. Co.*, 118 Mo.App. 341, 94 S.W. 762 (1906)). In *Nelson*, attorneys filed motions to set aside the satisfaction of a judgment in favor of plaintiff against defendant and to obtain judgments in their favor for attorneys' fees or services rendered the plaintiff. In the case at bar, the attorneys proceeded by a Motion for Distribution of Funds held in Escrow, said funds having been placed there by defendants. From an inspection of *Lawson v. Missouri & Kansas Telephone Co.*, 178 Mo.App. 124, 164 S.W. 138 (1914), it appears that the defendants heeded the advice of this Court and placed the funds to satisfy the plaintiff's claim in *custodia legis*

pending resolution of the attorneys' lien claim. In any event, the court in *Nelson* noted that in its case and previous actions, the attorneys had proceeded by motion in the original case, and that "the procedure in the case at bar is justifiable." 120 S.W.2d at 87.

The appellants' position appears even less persuasive when one examines *Satterfield v. Southern Railway Company*, 287 S.W.2d 395 (Mo.App.1956), in which it was held that:

> The remedy for enforcing the lien is not only left to the court, but in the final analysis it is up to the court to determine whether the method selected by the attorney is appropriate under all the facts and circumstances.... And an attorney is not restricted to any particular remedy for the foreclosing of his lien. He may proceed by an independent suit against the party who was the defendant in the original case.... Or he may proceed against the same party by motion in the original case. (Citations omitted)

*Id.* at 397.

As movants-respondents point out in their brief, it would make little sense to permit an attorney to proceed directly against the defendants in the original case, yet decline to allow him to proceed against a fund paid into court by the same defendants. For this reason, and because of the wide latitude given to the trial court to determine the appropriateness of the method selected to enforce an attorney's lien, we find this point lacks merit.

■ A more interesting but difficult issue is the remedy to be allowed an attorney, employed under a contingent fee contract, discharged without cause before settlement or judgment, yet after rendering valuable legal services. Missouri has been among those states that adhere to the so-called "contract rule" with the employment agreement between attorney and client being treated as any other employment contract. However, there are persuasive reasons why the contract between attorney and client should not be lumped together with those of ordinary trades. With the current increase

in litigation comes a corresponding growth in contingent employment contracts. Thus, to uphold the public faith in the court and its officers, it would appear proper for this court to review again the attorney-client relationship, and while so doing, we are aware that movants' prayer sought relief "on a contract theory, or in the alternative . . . on a quantum meruit theory. . . ."

We need quote only from two opinions of this Court to provide a point of reference for reconsidering the issue submitted.

It was held in *In re Thomasson's Estate, supra,* that:

> Where a lawyer is, without fault on his part, discharged by a client during the pendency of litigation for which he has been retained, he is entitled to be paid a reasonable fee for the work done prior to discharge; and this is true even though his original contract of employment was on a contingent basis. * * * The very nature of the lawyer's profession necessitates the utmost good faith toward his client and the highest loyalty and devotion to his client's interests.

144 S.W.2d at 83.

More recently in *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316 (Mo. banc 1979), we had occasion to resolve similar issues which were complicated further by competing claims of "successive" attorneys. Therein may be found an extended review of the pronouncements of this Court on the questions at issue. Two excerpts therefrom should be helpful:

> Initially we note that the relation between a lawyer and his client is a delicate and exacting one, highly personal, 7 Am. Jur.2d Attorneys at Law, § 92, at 105 (1963). The cause of action or claim which is the subject of the contract between lawyer and client is the property of the client and not the attorney. *Mills v. Metropolitan St. Ry. Co.,* 282 Mo. 118, 221 S.W. 1, 4 (1920). If plaintiff were dissatisfied with his attorneys he had the legal right to discharge them and employ other counsel, *Allen v. Fewel,* 337 Mo. 955, 87 S.W.2d 142, 145 (1935); *In re Downs,* 363 S.W.2d 679, 686 (Mo. banc 1963); *McLaughlin v. McLaughlin,* 427 S.W.2d 767, 768 (Mo.App.1968), subject to the attorney's right under certain conditions to be paid a fee, *In re Downs,* 363 S.W.2d at 686; *In re Thomasson's Estate,* 346 Mo. 911, 144 S.W.2d 79, 83 (1940).

\* \* \* \* \* \*

> However, it is permissible to ask for alternative relief, either on the contract or in quantum meruit. . . .

586 S.W.2d at 320–25.

The Florida Supreme Court recently found need to reevaluate its policy with reference to the recovery an attorney employed under a contingent fee contract may have, after discharge without cause, in *Rosenberg v. Levin,* 409 So.2d 1016 (Fla.1982). After recognizing the differing theories, discussed later herein, with respect to alternative means of recovery available to the discharged attorney, the court enunciated the public policy which must guide the Court throughout any discussion: "The attorney-client relationship is one of special trust and confidence. The client must rely entirely on the good faith efforts of the attorney in representing his interests. This reliance requires that the client have complete confidence in the integrity and ability of the attorney and that absolute fairness and candor characterize all dealings between them." 409 So.2d at 1021. From this premise, the Court logically reasoned that the unique aspects of the attorney-client relationship dictate that the client be given greater freedom to change legal representation than might be tolerated in other employment relationships. With this, the court overruled prior holdings which followed the majority or "contract rule," and adheres now to the growing minority or "modern rule", which limits the discharged attorney's recovery to the reasonable value of services rendered (quantum meruit). *Id.* at 1022. See the annotation in 92 ALR 3rd at 690, captioned: "Limitation To Quantum Meruit Recovery, Where Attorney Employed Under Contingent Fee Contract Is Discharged Without Cause."

The so-called modern rule is built upon the foundation of the special confidence and trust which should set the attorney-client relationship apart from other employment relationships. As stated in *Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46 (1916), at p. 47, "the peculiar relation of trust and confidence that such a relationship implies injects into the contract certain special and unique features." Taking into account this special relationship, and the greater freedom to change legal representation mandated thereby, the courts which observe the modern rule allow a client to discharge his attorney, with or without cause, at any time.[1] In other words, when a client becomes dissatisfied with his attorney, he may release that attorney and hire another. *Fracasse v. Brent*, 6 Cal.3d 784, 494 P.2d 9, 100 Cal.Rptr. 385 (1972). This position finds some support in Missouri case law,[2] although the exercise of this right to discharge the attorney is subject to the attorney's right under certain conditions to be paid a fee.[3]

Once it is accepted that the client has an *absolute* right to discharge his attorney, the logic of recovering a fee under the contract is suspect. If the client has the right to discharge the attorney, then the contract of employment can no longer be entirely viable upon the exercise of that right. Some jurisdictions articulate this reasoning by recognizing the right to discharge as *implied by law* into the employment contract.[4] Neither should the attorney be able to sue the client for alleged breach of contract because: "It would be anomalous and unjust to hold the client liable in damages for exercising that basic implied right." *Fracasse, supra*, 494 P.2d at 13, 100 Cal.Rptr. at 389 (directing attention to *Martin v. Camp, supra*). To quote again from the *Martin* case:

The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause.

114 N.E. at 48.

Besides being in the best interests of both the clients and the legal profession as a whole, *Rosenberg, supra*, at 1021, it can be said that the modern rule strikes a better balance between the client's power to discharge his attorney without undue restrictions and the attorney's right to fair compensation for services rendered. The majority-contract rule, which contemplates requiring payment of the contracted contingent fee regardless of the posture of the case at the time of discharge, was and continues to be patently unfair to clients, particularly where the client truly has lost faith in the attorney. *See* 41 Cincinnati Law Review 1003 (1972). As the Florida court correctly observed, the contract rule can "have a chilling effect on the client's power to discharge his attorney." *Rosenberg, supra*, at 1021. The economics of paying a discharged attorney the full contract price, and then hiring another attorney to continue his work, may be prohibitive. This danger is especially apparent in contingency fee situations, where "each" attorney may receive a large percentage of the client's final recovery. The consequences of the contract rule, in practical terms, may be that clients are forced to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence. *See Salopek v. Schoemann*, 20 Cal.2d 150, 124 P.2d 21 (1942) (Gibson, C. J., concurring).

Notwithstanding the logic and public policy which support the more modern view,

---

1. *E.g., Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46, 47 (1916); *Rosenberg v. Levin*, slip op. June 11, 1981; *Fracasse v. Brent*, 6 Cal.3d 784, 494 P.2d 9, 100 Cal.Rptr. 385 (1972).

2. *Allen v. Fewel*, 337 Mo. 955, 87 S.W.2d 142 (1935); *McLaughlin v. McLaughlin*, 427 S.W.2d 767 (Mo.App.1968).

3. *In re Downs*, 363 S.W.2d 679 (1963); *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 320 (Mo. banc 1979).

4. *E.g., Fracasse, supra*, 494 P.2d at 13, 100 Cal.Rptr. at 389; *Rosenberg, supra*.

there remain several problems under either theory. First, when does the discharged attorney's cause of action accrue and when does the statute of limitation begin? Courts which have reviewed this problem have generally divided into two camps following the lead of either New York or California.

New York, which initially recognized the limitation of recovery to quantum meruit, holds the cause of action to accrue upon discharge. *Martin, supra*, 124 P.2d at 49. There, it is believed that the removal of the case from the hands of the previously-employed attorney, and the fact that the attorney then hazards compensation upon the ability of another, equals sufficient reason to justify compensation immediately upon discharge. *Tillman v. Komar*, 259 N.Y. 133, 181 N.E. 75 (1932). See also *Fracasse, supra*, 494 P.2d at 23, 100 Cal.Rptr. at 398 (Sullivan, J., dissenting).

Contrary to New York, California courts hold that the discharged attorney's cause of action accrues only upon the occurrence of the contingency. *Fracasse, supra*, at 13–14, 100 Cal.Rptr. at 389–390. The case noted two reasons for so holding. First, a significant factor in determining the reasonableness of an attorney's fee is "the amount involved and the result obtained." *Fracasse, supra*, at 14, 100 Cal.Rptr. at 390, citing 1 Witkin, Cal. Procedure (2nd ed.), p. 120; ABA Code D.R. 2–106(B)(4).[5] Second, it would be improper to burden the client with an absolute obligation to pay the original attorney regardless of the outcome of the litigation. *Fracasse, supra*. To hold otherwise would further the "chilling effect" on a client exercising his admitted right to discharge an attorney, because he might be liable for fees to the original attorney even though he made no recovery whatever on his claim. *601 Lincoln Rd., Inc. v. Kelner*, 289 So.2d 12 (Fla.App.1974). While this theory may not comport with traditional contract law, wherein one who disaffirms a contract may not selectively enforce its provisions, *Tillman v. Komar, supra*, the broad public policy objectives to be served by this method, plus the "peculiar and distinctive features" of the attorney-client relationship, which were held by the New York court in *Martin* to differentiate attorney employment contracts from other employment contracts, more than defend and justify the position. This theory supports the modern rule's underlying policy that a client's cost of exercising the power to discharge his attorney should not be prohibitive. Note, *Attorney's Right To Compensation When Discharged Without Cause From A Contingent Fee Contract*, 15 Wake Forrest L.Rev. 677, 686 (1979).

Another problem arises within the issue of "how much" the discharged attorney may recover. In New York, the discharge of the attorney cancels the employment contract. *Tillman, supra*, at 75. Thus, the attorney may recover in quantum meruit an amount which might exceed the contract price. This may be an appealing result as being consistent with traditional notions of contract law; but, we must again stress that when dealing with the attorney-client employment situation, there are sufficient policy reasons to allow the court to act notwithstanding the typical constraints of a traditional contract theory. To allow the attorney unlimited recovery under quantum meruit loses sight of the rationale of the modern rule favoring a client's freedom to discharge his attorney without unreasonable burden.

The better rule, undoubtedly, would be to use the contract price as an upper limit or ceiling on the amount the discharged attorney could recover. As declared by the Tennessee Court of Appeals in *Chamblis, Bahner & Crawford v. Luther*, 531 S.W.2d 108 (1975), *cert. den.*, Tennessee Supreme Court, Dec. 8, 1975 (cited with approval in *Rosenberg*):

> It would seem to us that the better rule is that because a client has the unqualified right to discharge his attorney, fees in such cases should be limited to the value of the services rendered or the contract price, whichever is less.

531 S.W.2d at 113.

It seems to us that a necessary corollary to the rule that a client has the

---

5. *Accord*, Missouri Supreme Court Rule 4, D.R. 2–106(B)(4).

unqualified right to discharge an attorney, must be that the exercise of this legal right does not subject the client to additional penalties requiring him to pay an amount above the contract price.

*Id.*

A final question may arise as to the impact this holding could have upon the attorney's lien.[6] Since the attorney will be limited to recovery after the contingency occurs, the court would be the proper forum for enforcement of the lien, through whatever method seemed appropriate, and for determination of the reasonable value of those services rendered.[7]

Our adoption of the modern rule limiting the recovery of the attorney to the reasonable value of services rendered, not to exceed the contracted fee, and payable only upon the occurrence of the contingency, makes the case at bar easily disposed of. Paragraph 15 of the trial court's findings of fact anticipated that the contingency fee contract approach could be overruled, and, in the alternative, found from the evidence that the reasonable value of the services rendered by the attorneys, including proper out-of-pocket expenses, equaled $15,190.35. The record on appeal clearly supports the findings of the trial judge, and as such due regard should be given the opportunity of the trial court to have judged the credibility of the witnesses. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Supreme Court Rule 73.01, amended June 5, 1980, eff. Jan. 1, 1981.

Adoption of the modern rule of "recovery" evidences a greater sensitivity to the desired public policy of allowing a client to discharge his attorney at any time, without undue burden, in a manner that is not cost prohibitive, plus the broad objective of promoting greater confidence in the legal profession and the attorney-client relationship. Thus, an optimal balance will be created between the competitive goals of the parties involved with a full appreciation of the fact that in many instances the "reasonable" fee will be in the exact amount as the "contractual" fee.

Those rejecting the quantum meruit (reasonable fee) approach and holding to the contractual contingent fee, as being more fair to the attorney, of necessity concede that the latter was unreasonable—an idea totally repugnant to the attorney-client relationship.

Therefore, the judgment as entered is set aside and the cause is remanded for entry of judgment in accordance with the alternative finding of Judge Powell in favor of movant-respondents in the sum of $15,-190.35.

All concur.

---

**6.** Sec. 484.130, RSMo 1978.

**7.** Trial judges may determine the reasonable value of services rendered in accordance with Mo.S.C.Rule 4, D.R. 2–106 which reads in pertinent parts:

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.