Knaus v. Givens.

KNAUS *et al.*, *Appellants*, v. GIVENS *et al.*

Division One, May 23, 1892.

1.  **Partnership:** DISSOLUTION: NOTICE. Dissolution of a partnership does not destroy the power of a partner to bind the firm as to third persons without notice.

2.  **Negotiable Paper:** ISSUE AND INDORSEMENT AFTER MATURITY: EQUITIES. Negotiable promissory notes issued and indorsed after maturity are subject only to such equities as are connected with the notes themselves, and not to such as grow out of independent and distinct transactions between the original parties.

3.  ——: ——: ——: PRACTICE. Where the pleadings show the existence of such notes and equities, a peremptory judgment will not be authorized on the pleadings, but such equities must be developed and brought out in the ordinary way in the usual course of the trial.

4.  **Partnership:** EXECUTION OF NOTE BY FIRM TO MEMBER: SUIT BY INDORSEE. While no action at law can be maintained on a negotiable promissory note executed by a firm to one of its members, yet such incapacity to sue does not attach to the indorsee of such paper, who, when the transfer occurs, may sue all parties.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*R. C. Clark* and *Cosgrove & Johnston* for appellants.

(1)  While the notes in suit were held by W. A. Dudgeon he could not maintain a suit upon them against W. A. Dudgeon & Co., because he could not be both plaintiff and defendant in the same suit.  The difficulty vanishes on indorsement to a third person for value.  Appellants, although the notes were transferred to them after due and after the dissolution of the firm of W. A. Dudgeon & Co., can maintain this suit, and the trial court committed error in holding the contrary.  2 Bates on Partnership, sec. 884; *Young v. Chew,* 9 Mo. App. 387; *Pitcher v. Barrows,* 28 Am. Dec. 306; 17 Pick. 361; *Smith v. Strader,* 4 How. (U. S. Sup. Ct.) 403; *Richardson v. French,* 4 Met. 577, note in 1 Parsons on Contracts [6 Ed.] p. 182; *Kipp v. McChesney,* 66 Ill. 460.  (2)  The notes in the hands of appellants were subject only to such equities and defenses as grew out of and were connected with the notes themselves.  *Henley v. Holzer,* 19 Mo. App. 245; *Barnes v. McMullin,* 78 Mo. 260; *Cutler v. Cook,* 77 Mo. 388; *Gullett v. Hoy,* 15 Mo. 398.  The fact that, while Dudgeon owned and held the notes, he could not maintain a suit upon them is not a defense that can be made against appellants.  "A mere personal disability in the payee to sue cannot negative the maker's duty to pay, and, therefore, such a disability is not to be reckoned among the possible equities of which the indorsee assumes the risk."  *Young v. Chew, supra.*  (3) If the firm of W. A. Dudgeon & Co. owed Dudgeon the amount of the notes sued on, then his indorsees could recover, although the indorsements were made after the notes became due and after the firm of W. A. Dudgeon & Co. had dissolved.  *Chappell v. Allen,* 38 Mo. 224.

*A. J. Herndon, S. C. Major* and *Draffen & Williams* for respondents.

(1) A note by a partnership to one of the partners is like a promissory note, payable to one's own order, and does not become enforceable as a legal contract, until delivery to a third person. *Gale v. Miller*, 54 N. Y. 536; *Thompson v. Lowe*, 9 W. Rep. 671; *Davis v. Merritt*, 51 Mich. 480; *Young v. Chew*, 9 Mo. App. 387; *Pitcher v. Barrow*, 28 Am. Dec. 306; s. c., 17 Pick. 361; *Parker v. Macomber*, 18 Pick. 505. (2) The court below properly held that, as it stood admitted that the instruments were not issued to a third party until after the dissolution of the partnership, they could not be sued upon as the notes of said firm. *Gale v. Miller*, 54 N. Y. 536; 1 Randolph on Commercial Paper, sec. 221, p. 339; Collyer on Partnership, p. 1039; *Smyth v. Strader*, 4 How. (U. S.) 418. (3) The instruments were in legal effect mere vouchers for advances by the partner to his firm, to be taken into the final settlement. They were not notes, but mere certificates or memoranda of such alleged advances. "Such notes in the hands of one who stands in the shoes of the original payee cannot be made the basis of an action at law against the firm or as the remaining partners." *Thompson v. Lowe*, 9 W. Rep. 671; *Davis v. Merritt*, 51 Mich. 480; *Stoddard v. Wood*, 9 Gray, 90; *Lyons v. Murray*, 95 Mo. 23; *Hill v. McPherson*, 15 Mo. 204; *Calhoun v. Albin*, 48 Mo. 304. While upon this point the authorities are not in accord, the supreme court of Missouri concurs in the rule laid down in *Thompson v. Lowe, supra; Hill v. McPherson, supra; Calhoun v. Albin*, 48 Mo. 304.

SHERWOOD, P. J.—Action on six promissory notes. There are six counts to the petition, and it is in the

ordinary form.   Plaintiffs sue as the indorsees of these
notes, which are alleged to have been executed by W.
A. Dudgeon & Co., a firm composed of said Dudgeon
and defendants, Givens and Talbot.   The notes are
variously dated during the year 1884, are drawn one
day after date, etc., are made payable to said Dudgeon,
or order, and purport by him to be transferred to plain-
tiffs March 12, 1885.

The notes are alike in form, and the first note is as.
follows:

"$110.00.                                    1-3-1884.

"One day after date, we promise to pay to the
order of W. A. Dudgeon, treasurer, $110.   For value
received, negotiable and payable without defalcation or
discount, and with interest from date, at the rate of
eight-per-cent. per annum, and if the interest be not.
paid annually to become as principal and bear the same
rate of interest without exemption from appraisement,.
valuation or homestead laws.

"No. ——, due.            W. A. DUDGEON & Co.

"(Indorsement on back)      W. A. DUDGEON,

"Treasurer:"

Dudgeon defaulted; the other defendants pleaded
*non est factum*.   They also pleaded that Dudgeon signed
the partnership name to the notes without their knowl-
edge; that the notes were without consideration, and
that they were transferred to plaintiffs after maturity
and after the dissolution of the firm, etc.

The reply admitted the allegations of the answer
that Dudgeon was the managing partner of the con-
cern, a drugstore, and that he signed the partnership
name to the litigated notes, and held them until *after
their maturity, and until after the .dissolution of the firm,
and that they were not transferred to the plaintiff until.
the notes were past due and said firm was dissolved.*
Thereupon the defendants filed their motion for judg-

ment on the pleadings on the ground that, upon the facts admitted by the pleadings, the plaintiffs were not entitled to recover, and this without reference to contested questions of fact. The lower court granted the motion |and entered judgment for defendants; hence, this appeal, and the cause has been transferred by the Kansas City court of appeals to this court, in obedience to the constitutional mandate.

## OPINION.

I. The merits of this cause cannot be discussed in this opinion. The discussion will, therefore, be confined to the correctness of the action of the circuit court in entering judgment on the pleadings.

It will be observed that there is neither allegation nor admission in the pleadings that the plaintiffs were *notified* of the dissolution of the partnership at the time of the purchase of the notes. Without such notification in some form, the power of a partner to bind the firm as to third persons, though *inter sese* gone, remains as it was before. It scarcely seems necessary to cite authorities on so plain a proposition. On this point Collyer says: Sec. 578. "Subject to two exceptions, which will be examined hereafter, notice of dissolution of a firm, or the retirement of a partner duly given, determines the power previously possessed by 'each partner to bind the others. Hence, after the dissolution of a firm or the retirement of a member, and notification of the fact, no member of the previously existing firm is, by virtue of his connection therewith, liable for goods supplied to any of his late partners subsequently to the notification, nor is he liable on bills or notes subsequently drawn, accepted or indorsed by any of them in the name of the late firm, even although they may have been dated before the disso-

lution, or have been given for a debt previously owing from the firm by the partner expressly authorized to get in and discharge its debts." 2 Collyer on Partnership [6 Ed.] sec. 578; 1 Lindley on Partnership [2 Am. Ed.] 215.

Story says: "In the next place, such a dissolution will not absolve the partners from liabilities to third persons for the future transactions of any partners, acting for or on account of the firm, unless some one or more of the following circumstances occur: *First.* That the third persons dealing with or on account of the firm have due notice of the dissolution; or, *second*, that they have had no transactions whatsoever with the firm until after the dissolution; or, *third*, that the partnership was not general, but limited to a particular purchase, adventure or voyage, and terminated therewith before the transaction took place; or, *fourth*, that the new transaction is not within the scope and business of the original partnership; or, *fifth*, that it is illegal or fraudulent, or otherwise void from its defective nature or character; or, *sixth*, that the partner sought to be charged is a dormant partner, to whom no credit was actually given, and who retired before the transaction took place." Story on Partnership [7 Ed.] sec. 334.

An author already cited says: "So, if a partnership is dissolved, or one of the known members retires from the firm, until the dissolution or retirement is duly notified, the power of each to bind the rest remains in full force, although as between the partners themselves a dissolution or a retirement is a revocation of the authority of each to act for the others. Thus, if a known partner retires, and no notice is given, he will be liable to be sued in respect of a promissory note made since his retirement by his late partner, even though the plaintiff had no dealings with the firm

before the making of the note." 1 Lindley on Partnership, 213, 214.

A recent writer of recognized authority says: "But when dissolution occurs by agreement between the partners, or by retirement of one or more of them, notice of dissolution is necessary to avoid liability for future transactions in the firm-name. * * * The power of the partners to bind each other ceasing upon the dissolution, no one of them can thereafter enter into any contract which will bind the firm as to those affected with notice of dissolution, except such as is necessary and appropriate in settling the affairs of the concern. The dissolution operates as a revocation of all authority for making new contracts. * * * In New York it has been held that, even where a creditor is ignorant of the dissolution, a note given in the firm-name by an ex-partner who had purchased the other's interest would not bind the firm, the existing indebtedness of the firm still remaining good. But this view is against the accepted principles and precedents of the subject. * * * Where a note is issued by a partner after dissolution, it will not bind the other partners even though given for a debt due by the firm; and even though it is antedated so as to appear of a date anterior to the dissolution, and though it be in the hands of a *bona fide* holder without notice, unless, indeed he were not chargeable with constructive notice of the dissolution, in which case it would be different. * * * Suppose that A and B are partners, and while the firm is extant A, without the knowledge of B, signs and perfects a note in the firm-name, and, after dissolution, and when his authority has ceased to bind the firm, issues it for a private debt, and before maturity it reaches the hands of a *bona fide* holder for value. In such case is the firm bound? It would seem that the determination of the question should depend

upon the inquiry, would the firm be bound if the note had been signed and perfected at the time it was issued; and if then the *bona fide* transferee were chargeable with actual or constructive notice of the dissolution his title would seem to us defective. The note would stand upon the same footing as one that had been antedated, so as to relate back to the time when the signer had authority to bind the firm, in which event it would clearly be invalid as a firm note." Daniel on Negotiable Instruments [4 Ed.] secs. 369*a*, 370, 371, 372*a*, and cases cited. See also *Moore v. Lackman*, 52 Mo. 323; *Holt v. Simmons*, 16 Mo. App. 97.

The case of *Gale v. Miller*, 54 N. Y. 536, does not appear to be very accurately reported. Nothing is said about the question of notice or knowledge of dissolution, or of its importance in this connection; but the case is bottomed on the bold ground of the utter inability of a partner to bind the firm after the occurrence of dissolution. The case of *National Bank v. Norton*, 1 Hill, 572, is cited in support of the position there taken, but an examination of that case shows that it does not sanction that position; on the contrary, it recognizes the doctrine of *knowledge or notice to its fullest extent* as a necessarily disabling factor, where one partner attempts, after dissolution, to bind his former firm; for there the plaintiff was nonsuited on the ground that the bank had notice of the dissolution. But the judgment was reversed, and the cause remanded, on the express ground, as stated by COWEN, J., that "the note in question, being an attempt to renew an old note of the firm, which lay in the plaintiffs' bank, and was confessedly binding on the firm, the partners must be considered as dealers with the plaintiffs, who were, therefore, entitled to *actual notice* after dissolution, before they could be affected by it."

In the case at bar, if we are to be guided by the authorities already cited and quoted as to the necessity of notice in some form before the capacity of a partner to bind the firm is at an end, notwithstanding the previous occurrence of dissolution, it can but follow that the ruling of the lower court was erroneous in holding the admissions made by the reply as a sufficient basis for judgment.

II.   Taking this view, the case stands here as a suit on negotiable promissory notes issued and indorsed, so far as the pleadings show, after maturity, *but before notice of dissolution;* in which case, of course, the notes would not be *nullities,* but would be subject to any equities, and only to such equities as are connected with the notes themselves, and not such as grow out of independent and distinct transactions between the original parties.   *Gullett v. Hoy*, 15 Mo. 399; *Barnes v. McMullins*, 78 Mo. 260, and cases cited.   But the fact of the existence of such equities would not authorize a peremptory judgment on the pleadings.   If such equities exist, they must be developed and brought out in the ordinary way and in the usual course of trial.

III.   This cause has been transferred to this court on a supposed difference of views between this court, as expressed in *Calhoun v. Albin,* 48 Mo. 304, and the St. Louis court of appeals, as expressed in *Young v. Chew,* 9 Mo. App. 387.   The latter case asserts the correct doctrine, that, notwithstanding no action at law can be maintained on a negotiable promissory note, executed by a firm to one of its members, yet it is well settled that this incapacity to sue does not attend the indorsee of such paper, for where the transfer occurs the transferee may sue all parties.   [1 Daniel on Negotiable Instruments [4 Ed.] sec. 354; *Young v. Chew, supra,* and cases cited.   Whether such a disability to sue would attend the indorsee of a negotiable promissory

note after notice of dissolution, is a point not presented by this record, and, therefore, cannot be passed upon. The case of *Calhoun v. Albin, supra,* so far as concerns the point in hand, was incorrectly decided, inasmuch as it fails to distinguish the difference between a negotiable and a non-negotiable note, and the *indorsement* of a note of the former description, and the *assignment* of a note of the latter description.   1 Daniels on Negotiable Instruments, secs. 666, 729.   That case attempts to follow the ruling made in *Hill v. McPherson,* 15 Mo. 204, in which the ruling was based on a *non-negotiable* note, which had been assigned, and, of course, was governed by a statute relating to the assignment of such paper, and which gave the same right of defense in *second* as in *first* hands.   The case of *Gullett v. Hoy,* in the same volume already cited, points out the distinction between the different kinds of instruments already mentioned.

For the reasons stated, the judgment should be reversed, and the cause remanded.   All concur.