AGNES O'DAY CRAWFORD, Appellant, v. MILT M. JOHNSON, Respondent.

St. Louis Court of Appeals, March 4, 1901.

1. **Promissory Note: NEGOTIABLE INSTRUMENT: BILLS OF EXCHANGE: STATUTORY CONSTRUCTION.** In the case at bar, the promissory note is a negotiable instrument by the terms of section 457, Revised Statutes 1899, enacted for the purpose of putting promissory notes upon the same footing as inland bills of exchange.

2. ——: ——: ——: ——. And to give promissory notes this quality, it is only necessary that they should express a promise to pay money at a time certain, or capable of being rendered certain, should designate the payee to whom or to whose order they are payable, and should be expressed to be for value received.

Crawford v. Johnson.

3. ———: ———: ———: INDORSEMENT OF PAYEE UNDATED: PRESUMPTION: VALUE: TRANSFEREES: GOOD FAITH. In the case at bar, the indorsement of the payee, being undated, created a prima facie presumption that it was made before maturity of the note, and that the subsequent transferees by delivery acquired the note before maturity for value and in good faith.

4. ———: NEGOTIABLE PAPER PAST DUE: INDORSER: EQUI-TIES:INDEPENDENT TRANSACTIONS. The taker for value, of past due negotiable paper, is not subject to equities against his indorser which grows out of transactions independent of the note or instrument.

Appeal from Greene Circuit Court.—*Hon. John Schmook, Special Judge.*

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

This suit was begun before a justice on the following note: "$100.00 ˜ Springfield, Mo., March 30, 1891.

"On the day of the completion of the opera house, hereinafter mentioned, be it on the first day of December, 1891; or on the first day of March, 1892, at whichever of said days said opera house shall be completed and fitted up, I promise to pay to the order of W. W. Baldwin, one hundred dollars, *for value received,* at the Commercial Bank of Springfield, Mo."

The note further recites its consideration to be that the payee, his associates or assigns, shall erect an opera house building within the maturity of the note. It was signed by defendant M. M. Johnson, and indorsed in blank by the payee, W. W. Baldwin.

On the trial in the circuit court, the plaintiff introduced the note, proved the indorsement of the payee, and testified that she was the owner of the note, having received it in the

spring of 1893 from her husband in part security of twelve
or fifteen hundred dollars *then* loaned to him, which he had
not repaid to her.     It was admitted that the building was
constructed in the time and according to the plans and spec-
ifications in the note.     The testimony for defendant tended to
show (over plaintiff's objections and exceptions), that he was
entitled to receive about $140 for hauling material and pay-
ment of freight bills thereon which was used in the construc-
tion of the opera house referred to in the note in suit; that
John D. Porter, who was one of the officers of the association
or company engaged in the construction of the building, agreed
that the note should be credited by the amount of these bills,
and further agreed to pay the excess of said bills to defendant
whenever any money of the building company came into his
hands; that the husband of plaintiff was also a director of this
building company; that this agreement in reference to the
setoff against the note was made subsequent to its execution.
It further appeared that the note in suit, together with others
of a similar character, were in the possession of Seth Tuttle
until the building was completed; Tuttle stating that he held
such notes as indemnity for his personal suretyship on a twenty-
thousand-dollar note given to Baldwin (the payee of the note
in suit), to raise money for the construction of the building,
and upon an adjustment of his liability of this indebtedness,
after he had paid about six thousand dollars thereon out of the
proceeds of such collaterals, he turned over the remainder, in-
cluding the note in suit, to the husband of the plaintiff.     There
was also some evidence that this note and others were used as
collateral for a loan of three thousand dollars made by the
bank of which the plaintiff's husband was cashier, which lat-
ter indebtedness is not shown ever to have been paid.

From the action of the trial court in the refusal of the
declarations of law requested by plaintiff, and the findings

made by him (the case having been submitted to him without the aid of a jury), it is apparent that he held the agreement between the defendant and the officers of the building company or association, with reference to the setoff of defendant's services and payment of freight against the note, was preclusive against plaintiff from the mere fact that she received the note in suit, although for value, from her husband after its maturity. The court accordingly gave judgment for defendant, from which plaintiff has appealed.

*O. H. Travers* for appellant.

(1) The note sued on is a negotiable instrument. R. S. 1889, sec. 733. "The term 'negotiable' in its enlarged signification applies to any written security which may be transferred by indorsement or delivery so as to vest in the indorsee the legal title so as to enable him to maintain a suit thereon in his own name." Odell & Frink v. Gray & Co., 15 Mo. 342; Ubsdell v. Pierson, 22 Mo. 124. The note was payable to Baldwin or order and by him indorsed. This is sufficient to make it negotiable. Dan'l Neg. Inst., sec. 99; Fitzgerald v. Barker, 85 Mo. 13. It conforms to the requirements of the statute which reads: "Every promissory note for the payment of money to the payee therein named, or order or bearer, and expressed to be for value received, shall be due and payable as therein expressed, and shall have the same effect and be negotiable as inland bills of exchange;" hence, it is negotiable. Famous Shoe Co. v. Crosswhite, 124 Mo. 34. The stipulation in the note that it should be payable if the opera house should be completed at either of the two dates mentioned therein, does not vitiate its negotiability. Crow v. Harmon, 25 Mo. 417; Ewing v. Clark, 76 Mo. 545; also, 8 Mo. App. 570; Still-

Vol 87 app—31

well v. Craig, 58 Mo. 24; First National Bank v. Skeen, 101 Mo. 683; also, 29 Mo. App. 115. (2) The note by its terms is payable in dollars, not in work. Any testimony which would tend to sustain defendant's contention would vary the terms of the note. So, all the evidence in the case relative to Johnson's alleged agreement to pay the note in hauling, is inadmissible and should have been excluded. This evidence out of the case, judgment for plaintiff would have been inevitable. Parol testimony is not admissible to change an unconditional promise in writing, and a condition not contained in the note itself, but dwelling in parol only, can not be proven to avoid the note. Wislizenus v. O'Fallon, 91 Mo. 184; Ewing v. Clark, 8 Mo. App. 570; Henshaw v. Dutton, 59 Mo. 143; Reed v. Nicholson, 37 Mo. App. 646; Jones v. Jeffries, 17 Mo. 577; Blackburn v. Harrison, 39 Mo. 303.

*William H. Horine* for respondent.

(1) The note sued on is non-negotiable. Commercial paper to be negotiable, the payment must be unconditional, and the instrument must be payable at a time certain, and not in the alternative, and any contingency, either as to amount to be paid, or as to the time when payment is to occur, robs the paper of that certainty which is one of the chief essentials of negotiability. Daniel on Negotiable Instruments, sec. 41; Tiedeman on Commercial Paper, sec. 25; Stutts v. Silva, 119 Mass. 137; Chouteau v. Allen, 70 Mo. 290-339. Contract or note payable in money may, by agreement of parties, be paid in any commodity. Tiedeman on Commercial Paper, sec. 376. Work may be done and received under an agreement, in payment of a bill or note, and such payment may be proved by parol. Martin v. Draher, 5 Watts, 544; Jennings v. Davis, 31 Conn. 134; Randolph on Commercial Paper, sec. 1408.

(2)    The transferee of negotiable paper, to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferrer, and takes it subject to all the equities with which it was incumbered in the hands of the transferrer.    Daniel on Negotiable Inst., sec. 724a; Ford v. Phillips, 83 Mo. 523; Julian v. Calkins, 85 Mo. 202; Wheeler v. Barrett, 20 Mo. 573; Jaudon v. Bank, 8 Blatch. 438.

BOND, J.—The promissory note in this case is a negotiable instrument by the terms of the statute enacted for the purpose of putting certain promissory notes upon the same footing as inland bills of exchange.    To give promissory notes this quality, it is only necessary that they should express a promise to pay money at a time certain; or capable of being rendered certain, should designate the payee to whom or to whose order they are payable, and should be expressed to be for value received.    R. S. 1899, sec. 457; Goodwin v. Buhler, 57 Mo. App. loc. cit. 67; Shoe & Clothing Co. v. Crosswhite, 124 Mo. loc. cit. 38; Crow v. Harmon, 25 Mo. 417; R. S. 1899, sec. 894.    The note in suit bears all these statutory requisites. It was also indorsed in blank by the payee, whose title was thereafter transferable, without further indorsement, by the mere delivery of the paper.    The indorsement of the payee, being *undated,* created a prima facie presumption that it was made before maturity of the note, and that the subsequent transferees, by delivery, acquired the note before maturity for value and in good faith.    Daniel on Negotiable Instruments, section 784; New Albany Woolen Mills v. Meyers & Co., 43 Mo. App. loc. cit. 128; Eyermann v. Piron, 151 Mo. loc. cit. 116.    This presumption as to the time of acquisition of the instrument by the plaintiff was overcome by her admission that she got it from her husband in 1893, but there was no testimony that either her husband or Tuttle (both of whom held the note be-

fore plaintiff), acquired the instrument after its maturity. As to Tuttle, the first holder of the note after its indorsement by the payee, there was no evidence whatever rebutting the presumption that he acquired the paper before its maturity for value and in good faith. On the other hand, he testified to a state of facts which tended to show that he was an innocent purchaser of the note for value and before maturity, for he states that he took it before maturity as collateral security against loss by the present assumption of the obligations as a surety on a twenty-thousand-dollar indebtedness. Loewen v. Forsee, 137 Mo. 29. There was evidence, however, tending to show that plaintiff's husband knew of an agreement for the payment by defendant on this note by crediting thereon his demands for hauling and payment of freight. But even with this knowledge, plaintiff's husband could acquire the higher title of a previous innocent holder for value of the note. This is permitted for the full protection of a bona fide purchaser of a negotiable instrument before maturity, and the same rule is applicable to real estate. Dan. Neg. Ins., secs. 726a, 803; Griswell v. Buckley, 72 Mo. App. loc. cit. 56; Bank v. Stanley, 46 Mo. App. 440; Carig v. Zimmerman 87 Mo. loc. cit. 479. If, therefore, the evidence showed that Tuttle acquired the note by the indorsement of the payee therein, before its maturity for a valuable consideration and without notice, his transfer to the plaintiff's husband invested the latter with the same rights to recover on the note to which Tuttle was previously entitled. This favored the status of the husband as the transferee (though after maturity), of a bona fide purchaser of the note before maturity, is one which he had the power of transmitting to his wife or any other subsequent transferee. Roberts v. Lane, 64 Maine 108; Cromwell v. Sac. County, 96 U. S. 51. Such subsequent transferees, though acquiring the title which their transferrer had previously bought, could not, however, take a

greater title than he had *at the time* of the transfer to them. If, therefore, the note, while in his possession, became affected with any infirmity adhering to or connected with the note itself —such payments, accord, etc.—these defenses would pass with the note into the hands of the party taking it after maturity. Hunleth v. Leahy, 146 Mo. loc. cit. 418; Booher v. Allen, 153 Mo. loc. cit. 622; Turner v. Hoyle, 95 Mo. 337. But the taker for value of past due negotiable paper, is not subject to equities against his indorser which grew out of transactions independent of the note or instrument. Cutler v. Cook, 77 Mo. 388; Barnes v. McMullins, 78 Mo. 260; Knaus v. Givins, 110 Mo. 58; Kelly v. Staed, 136 Mo. loc. cit. 436; Gemmel v. Hueben, 71 Mo. App. loc. cit. 295, and cases cited. In the case at bar, the plaintiff's assignor was her husband. The defense attempted to be set up against the note in her hands does not grow out of any infirmity in the instrument, nor is it in anywise connected with the contract expressed by the terms of the note. It rests solely upon an alleged agreement had by the defendant with the representative of a building concern—which was not a party to the note. It related to matters wholly disconnected with the performance of the contract expressed by the note, was not claimed to have been made until after the execution of the note, and if available at all against that instrument, could only have been claimed upon the theory that it created a right of setoff of a demand due the defendant from the building company for whom he rendered the services of hauling and payment of freights. There is no evidence that the present plaintiff was a party to or cognizant of any such agreement. Although as transferee for value after maturity, she took the note in suit from her husband subject to any defenses legally attaching to it while in his possession, she did not take it subject to the defense in this case even if it constituted matter of valid setoff. For, it has

been aptly said by our Supreme Court, "in this state when a negotiable note is indorsed or transferred after maturity, the right of offset or counterclaim on an independent contract, does not follow it in the hands of the assignee. We adhere to the English rule, that only such equities follow it as arise out of or adhere in it, and that the assignee takes it divested of all rights and claims arising out of independent transactions." Barnes v. McMullins, 78 Mo. loc. cit. 270; Daniel on Neg. Inst., sec. 725. It follows that this case was decided upon an erroneous theory of the rights of the plaintiff. The judgment is, therefore, reversed and the cause remanded. Judge *Bland* concurs; Judge *Goode,* having been of counsel in the matter, does not sit nor participate in the decision.