STATE OF MISSOURI at the relation of MASSMAN CONSTRUCTION COMPANY, Relator, v. HOPKINS B. SHAIN ET AL., Judges of the Kansas City Court of Appeals.

STATE OF MISSOURI at the relation of MITCHEL J. HENDERSON, Relator, v. HOPKINS B. SHAIN ET AL., Judges of the Kansas City Court of Appeals.—130 S. W. (2d) 491.

Division One, July 7, 1939.

*Martin J. O'Donnell* for relator.

1006

*W. M. Raines* for respondents and Thos. E. Deacy.

BRADLEY, C.—These causes are in certiorari to quash the opinion by the Kansas City Court of Appeals in Nelson v. Massman Construction Company et al., 120 S. W. (2d) 77. They were separately commenced and separately briefed, but were consolidated and argued together. The facts, as they appear in the opinion and by which we are bound, are, in many respects, common to both causes. It appears in the opinion sought to be quashed that Thomas E. Nelson brought suit against the Massman Construction Company and recovered a judgment for $5500. [See Nelson v. Massman Construction Company, 231 Mo. App. 1, 91 S. W. (2d) 623.] The law firm of Jacobs & Henderson (Floyd E. Jacobs and Mitchel J. Henderson) had a contract with Nelson to prosecute the suit against the Massman Construction Company, by which contract the firm was to receive for services 50 per cent of the net amount recovered. Thomas E. Deacy, an attorney, but not a member of the firm of Jacobs & Henderson, "had arrangements with said law firm whereby he, according to his testimony, was to receive 25 per cent of the fee" in the Nelson case. When the judgment was paid, November 13, 1936, it amounted to $6437.55, and this amount was paid by the Massman Construction Company to the clerk of the circuit court. The payment was made by a trust company treasurer's check made payable to the clerk, who endorsed the check without recourse and delivered it to Nelson. Thereupon Nelson receipted the clerk, satisfied the record of the judgment, and delivered the check to Jacobs, who cashed it, paid some expenses incurred in the Nelson case, retained $3000 as the attorney's fee in the case, and turned the balance over to Nelson. About ten days before these transactions, the clerk, Massman Con-

struction Company and its attorney were given written notice by Henderson and Deacy that they claimed to have an interest in and a lien on the Nelson judgment. When the clerk received such notice there was placed, by a deputy clerk, on the margin of the record of the judgment this pencil note: ''Do not allow this judgment to be satisfied. Henderson and Deacy file attorney lien on judgment. See files.''

Henderson and Deacy, about twenty minutes before the payment of the amount of the judgment to the clerk, etc., received notice from the office of the Massman Construction Company's attorney that the Nelson judgment would be paid to the clerk at 11:30 A. M. that day. Deacy got to the clerk's office before all the transactions pertaining to the payment, etc., were completed, but was not able to do anything about it. Henderson and Deacy then went into the circuit court and filed separate motions in the Nelson case to set aside satisfaction of the judgment, and to secure judgments against the Massman Construction Company for their fees. The motions were on the theory that Henderson and Deacy, separately, had an attorney's lien on the judgment. On a hearing the trial court sustained these motions and set aside satisfaction of the Nelson judgment and entered separate judgments in favor of Henderson and Deacy. The Henderson judgment was: ''Now, therefore, it is by the court considered, ordered and adjudged that the release and satisfaction of the judgment heretofore entered in this cause (the Nelson case) on the 10th day of January, 1934, made by the plaintiff (Nelson) on November 13, 1936, be and is hereby set aside and that execution issue upon said judgment in favor of the said Mitchel J. Henderson in the sum of eleven hundred and twenty-five ($1125.00) dollars (one half of the fee, under the contract, based on the judgment of $5500), same being the amount of the attorney's lien held by the said Mitchel J. Henderson against said judgment, and that said Mitchel J. Henderson have and recover of and from the Massman Construction Company, a corporation, defendant herein, the sum of eleven hundred and twenty-five ($1125.00) dollars, together with the costs of this proceeding.''

The judgment on the Deacy motion was about the same in form and the amount was $750, being 25 per cent of the amount of the fee retained by Jacobs.

The Massman Construction Company appealed to the Kansas City Court of Appeals, and the Court of Appeals reversed the judgment of the trial court in favor of Henderson, but affirmed as to Deacy. These certiorari proceedings followed.

We shall first consider what we may term the Deacy case. It appears from respondents' opinion that Deacy took an active part in the trial of the Nelson case in the circuit court and argued the case the first time it was up in the Court of Appeals. The Court of Appeals at first handed down an opinion reversing the judgment and remand-

ing the cause. Thereupon and thereafter Jacobs, at the direction of Nelson, looked after the case. Motion for a rehearing was filed and sustained; the case was reargued, and the judgment was affirmed. Certiorari was denied by this court, and also by the Supreme Court of the United States. [Massman Construction Company v. Nelson, 299 U. S. 569, 57 Sup. Ct. 32, 81 L. Ed. 419.]

As to what was done on behalf of Henderson and Deacy immediately upon receipt of the notice that the Nelson judgment would be paid to the clerk, Deacy testified: "I immediately called Mr. Burns, the circuit clerk, and I told him that this notice had been served upon us. I asked him what he was going to do in the event the money was paid into his hands. He stated to me that in the event the money was paid into his hands he was going to pay the money over to the plaintiff (Nelson) and that he would pay the money over to the plaintiff and not require any release or any signature on the part of any of the attorneys in the case. I got down to the court house as soon as I could, and as I walked into the circuit clerk's office, Mr. Jacobs and Mr. Nelson were there present and had already received the money from the hands of Mr. Burns, the circuit clerk. Wait a minute. I am slightly incorrect there. The money had been paid into the hands of Mr. Burns, the circuit clerk, and Mr. Burns told me that he was going to immediately pay the money out to Mr. Nelson. I asked him to wait until I could have an opportunity of seeing Your Honor. In the meantime I had prepared, in the few moments which I had, a motion to impound the money, and brought that down here and attempted to contact Your Honor, but Your Honor was out, or busy, or unavailable. And I went on back downstairs, and the money had then been paid out by the circuit clerk to the plaintiff in the case."

Concerning the payment to the clerk, Jacobs testified that the day before such payment, he found out that the Massman Construction Company intended to pay the amount of the judgment to the clerk; that he went to see the clerk and told him "definitely that this money belonged to Nelson and that I was his only attorney with my present associates (the firm of Jacobs & Henderson was dissolved April 1, 1935); and that the money was due him (Nelson). . . . I told Mr. Burns (the clerk) who the money belonged to, and told him we were going to insist on payment to us." Jacobs also testified that Deacy was to receive 20 per cent, instead of 25 per cent as Deacy claimed, "in the cases (of Jacobs & Henderson) wherein he (Deacy) took an active part." Henderson did not testify.

Much space in relator's brief (in the Deacy case) is given to the merits. What was said in State ex rel. Public Service Commission v. Shain et al., 342 Mo. 867, 119 S. W. (2d) l. c. 222, is applicable here and we quote: "In proceedings of this kind (certiorari), we are concerned only with the question of conflict, and we look only to the opin-

ion of the Court of Appeals for the facts, as has been sufficiently enunciated heretofore. . . . Contentions not decided by the Court of Appeals cannot be made the basis of a ruling quashing its record on certiorari on the grounds that the opinion is in conflict with decisions of this court.'' Relator cites and quotes from cases by the Courts of Appeals. Conflict with decisions by the Courts of Appeals will not support certiorari. [State ex rel. Brotherhood of Locomotive Firemen and Enginemen v. Shain et al., 343 Mo. 666, 123 S. W. (2d) 1, l. c. 6, and cases there cited.]

■ Assignments of conflict are not very clear, but we may say that conflict is assigned (1) on the ruling, as relator construes, that Deacy was entitled to have applied to his case ''the most favorable inference of all the credible testimony in the case;'' (2) on the ruling that the payment of the $3000 to Jacobs did not discharge relator from liability to Deacy; (3) on the ruling that the payment of the $6437.55 to the clerk of the court did not place the money *in custodia legis*; and (4) on the ruling to the effect that Deacy, in his motion to set aside, etc., alleged a specific contract and was permitted to recover on an implied contract. In other words, one cause of action was alleged and recovery was had on an entirely different theory.

That part of the opinion pertinent to the first assignment of conflict reads (120 S. W. (2d) l. c. 90): ''In our statement of the case we have based same upon evidence most favorable to the movant (Deacy). There is evidence shown that is contradictory to the facts of evidence we have set forth herein. However, as the judgment in the circuit court was in favor of movant, and as the trial court was in a position to know as to whether or not appellant (Massman Construction Company) so placed the funds *in custodia legis*, thereby throwing upon the law and the court the responsibility of saying where and to whom it should go, we conclude that movant is entitled to have applied to his case *the most favorable inference of all the credible testimony in the case* and that we should defer to finding of fact made by the trial court, therefore, we do not burden our opinion with a discussion of unfavorable evidence.'' (Italics ours.)

Relator contends that the italicized portion, as a statement of the law, conflicts with the numerous rulings of this court that in an equity case appeal, the facts are considered *de novo,* without regard to the most favorable inference rule that obtains in a law case on appeal where the facts are challenged by demurrer. But it is apparent that respondents did no more than to defer to the finding of facts made by the trial court. That is what the opinion says was done. The first assignment of conflict is not tenable.

■ Respondents ruled to the effect that the payment of the $3000 fee to Jacobs, under the facts, did not discharge the Massman Construction Company for liability to Deacy. Does this ruling conflict with any previous ruling of this court? The course of reason pur-

sued by respondents respecting this question follows (120 S. W. (2d) l. c. 88).

"Under the evidence in this case, we conclude that movant Deacy stands in a position of an independent lawyer called into the case by the law firm of Jacobs & .Henderson. The evidence clearly discloses that Mr. Deacy was not a member of the law firm, and not, therefore, a party to and a joint obligee in the contract between Mr. Nelson and Jacobs & Henderson. It follows that Mr. Deacy has no right that he can assert directly upon the Nelson contract with the law firm.

"We conclude that any right to a lien on the judgment involved herein, if any, that Mr. Deacy may have must arise from the fact that he did valuable service with full knowledge and consent of Mr. Nelson. That Mr. Deacy did valuable service in the case is clearly established by the evidence. Further, it is clearly shown that Mr. Deacy has received nothing for his services.

"The attorney fee in this case is purely contingent. Insofar as Mr. Nelson is concerned, it stands admitted that his obligation to the lawyers attached to 50 per cent of the net amount collected as a result of the suit.

"Whatever was the understanding or belief on the part of Mr. Nelson, as to how Mr. Deacy was to be paid for his services in the case, has but little bearing upon the question as to whether Mr. Deacy had a lien for his services. Under the facts as shown in this case, no additional cost was imposed upon Mr. Nelson for the services rendered by Mr. Deacy. Mr. Jacobs and Mr. Henderson had a perfect right to secure the services of Mr. Deacy in this case, and to contract for such services upon a basis of a per cent of the contingent fee agreed upon with Mr. Nelson. Such a contract was made with Mr. Deacy. Mr. Nelson had full knowledge of the services rendered in the case, and accepted same and received the fruits of same."

As supporting the second assignment of conflict, relator cites Lamport et al. v. Aetna Life Ins. Co. (Mo.), 199 S. W. 1020. That case did not involve an attorney's fee, but involved the power of an attorney to waive the misconduct of the trial judge in going into the jury room and talking to the jury about the case. All the attorney had to do with the case was to sit at the counsel table while the case was being tried; assisted in getting out subpoenaes "and seeing that the witness for plaintiffs were in attendance, and had been asked to remain at the court house and inform counsel for the plaintiffs the result of the verdict reached." We find no support for the second assignment of conflict in the Lamport case, or any other case.

■ The third assignment of conflict is on the ruling that the payment by relator of the amount due on the Nelson judgment to the clerk of the court did not place the money *in custodia legis*. Relator cites no case from this court supporting the third assignment of conflict and we find no such case. Noell v. Mo. Pac. Ry. Co., 335 Mo.

687, 74 S. W. (2d) 7, was to recover for an attorney's fee. In that case it was said (74 S. W. (2d) 1. c. 12): "Nevertheless, had defendant paid the money to the clerk of that court, we think upon the authority of Laughlin v. Union Pacific Railroad Co., supra (196 S. W. 398), it would have been liable to plaintiff for disregarding his lien." We find no support for relator's third assignment of conflict.

For convenience we repeat the fourth assignment of conflict as we have stated it. The fourth assignment of conflict is on the ruling to the effect that Deacy, in his motion to set aside, etc., alleged a specific contract and was permitted to recover on an implied contract. In other words, one cause of action was alleged, and recovery was had on an entirely different theory. The separate motion of Deacy is not set out in the opinion, but reference to it is made. Such being so, we may examine this motion as though it were set out in full in respondents' opinion. [State ex rel. Brotherhood of Locomotive Firemen and Enginemen v. Shain et al., 343 Mo. 666, 123 S. W. (2d) 1, 1. c. 2, and cases there cited.]

In the motion Deacy alleged: "Comes now your petitioner, Thos. E. Deacy, and respectfully shows the court that he is, and was at all times herein mentioned, a duly licensed and practicing attorney at law in Kansas City, Missouri; that on and prior to the 10th day of February, 1932, your petitioner was associated with the law firm of Jacobs & Henderson, a co-partnership, composed of Floyd E. Jacobs and M. J. Henderson, in the practice of the law in Kansas City, Missouri; that prior to the 10th day of February, 1932, said firm of Jacobs & Henderson *and* your petitioner were employed by Thomas Nelson . . . to institute, file and prosecute the . . . cause of action against Massman Construction Company, a corporation, with the understanding and agreement that as compensation for legal services rendered and to be rendered unto Thomas Nelson by the said firm of Jacobs & Henderson *and* by your petitioner, Thos. E. Deacy, that said law firm of Jacobs & Henderson *and* your petitioner should receive a sum equal to fifty (50) per cent of any and all sums which might be recovered in said action, either by suit or compromise, and that it was the understanding and agreement between your petitioner and said firm of Jacobs & Henderson and said Thomas Nelson that your petitioner should receive for his services a sum equal to twenty-five (25) per cent of the total fee which might be collected in said action." (Italics ours.)

After so pleading, the motion goes on to allege what Deacy did in the prosecution of the Nelson case and alleges that he "was and is entitled to the sum of $800, same being the amount of his attorney's fees under the understanding and agreement between this petitioner (Deacy) and" Nelson; that "no part of said sum has ever been paid unto your petitioner and that your petitioner had a lien against the (Nelson) judgment . . . in the sum of $800.00." The prayer

of Deacy's motion follows: "Wherefore, your petitioner respectfully prays this court to make and enter an order setting aside the satisfaction of the judgment heretofore entered in this cause, and that this court order that an execution issue upon said judgment in favor of this petitioner in the sum of $800.00, same being the amount of your petitioner's lien and interest in the same, and that your petitioner have and recover of and from the defendant herein the sum of $800.00, together with the cost of this proceeding."

Respecting the fourth assignment of conflict, it is stated in respondents' brief that Deacy "alleged the contract of the plaintiff (Nelson) with the law firm of Jacobs & Henderson and alleged his (Deacy's) employment by the firm of Jacobs & Henderson to participate in the case." And it is stated in the brief that Deacy alleged "that he was not a member of the law firm of Jacobs & Henderson and was not a party to the express contract between Jacobs & Henderson and the plaintiff, Nelson, but that he acquired an implied contract with the plaintiff, Nelson, by reason of his employment in the cause by said law firm, with the knowledge and consent of the plaintiff, Nelson." Reference to Deacy's motion, supra, disclosed that no such allegations were made. Instead of alleging that he was *not* a member of the firm of Jacobs & Henderson, he alleged that he *was associated with Jacobs & Henderson in the practice of the law;* and instead of alleging that he was *not* a party to the contract between Jacobs & Henderson and Nelson, he alleged that he, *and* Jacobs & Henderson were employed by Nelson. Also, he alleged that he, *and* Jacobs & Henderson were to receive 50 per cent, etc., for the attorneys' fee. This motion is too plain for dispute as to what it alleges. And it is equally plain, as relator contends, that the respondents based their ruling in favor of Deacy on a contract other than the one pleaded in his motion, and on an entirely different cause and theory than alleged. Nothing to the contrary appearing, it may be assumed that the Deacy motion was tried on the facts or theory alleged. "The term *theory* when used in connection with the trite rule that recovery cannot be had in an appellate court on a different theory than that upon which the case was tried, evidently does not have reference to what *facts* the evidence establishes, but the term *theory*, when so used, has reference to *cause of action,* or *defense,* or to 'a matter essential to the rendition of the judgment.' " [State ex rel. Brotherhood of Locomotive Firemen and Enginemen v. Shain et al., 343 Mo. 666, 123 S. W. (2d) 1, l. c. 4; State ex rel. Bush v. Sturgis et al., 281 Mo. 598, 221 S. W. 91, 9 A. L. R. 1315.]

Respondents' ruling that Deacy could recover on a contract and theory entirely different than that alleged and upon which the cause was tried is in conflict with many decisions of this court, among which are Henry County v. Citizens Bank, 208 Mo. 209, l. c. 225, 106 S. W. 622; Snyder v. Am. Car & Foundry Co., 322 Mo. 147, 14 S. W. (2d)

603, l. c. 606; Hobbs v. Hicks et al., 320 Mo. 954, 8 S. W. (2d) 966, l. c. 969; Benz et al. v. Powell et al., 338 Mo. 1032, 93 S. W. (2d) 877, l. c. 879. See, also, Cole v. Armour et al., 154 Mo. 333, 55 S. W. 476; Mills v. Met. St. Ry. Co., 282 Mo. 118, 221 S. W. 1; Jones v. Hill (Mo.), 18 S. W. (2d) 382.

Respondents' ruling in the Deacy case as stated in the fourth assignment of conflict should be quashed, and it is so ordered.

Realtor, Henderson, makes several assignments of alleged conflict, but the meat of the complaints is that respondents' ruling that payment of the fee to Jacobs bound him is in conflict with prior controlling decisions of this court. It appears that the firm of Jacobs & Henderson was dissolved prior to the payment of the $3000 fee to Jacobs on November 13, 1936, and that the Massman Construction Company, at that time, had notice of such dissolution. And so relator contends that the payment of the $3000 fee to Jacobs, did not discharge Massman Construction Company from liability to him. Many cases are cited to support the alleged conflict. Typical of the cases cited are Knaus et al. v. Givens et al., 110 Mo. 58, 19 S. W. 535; Seufert v. Gille, 230 Mo. 452, 131 S. W. 102.

The Knaus case was by the endorsees on six promissory notes. The notes were payable to "W. A. Dudgeon, treasurer," and were executed by "W. A. Dudgeon & Co.," a partnership composed of Dudgeon, Givens, and Talbot. Dudgeon was not made a party defendant. Among other defenses, Givens and Talbot pleaded that Dudgeon, after the dissolution of the firm and after maturity of the notes, transferred them to plaintiffs. The reply so admitted. Thereupon a motion by defendants for a judgment on the pleading was sustained. It was not alleged that the plaintiffs had notice of the dissolution when they purchased the notes, and it was held that, absent such notice, the power of Dudgeon to bind the firm as to third persons remained as it was before dissolution. The rule is that, after dissolution, a member of a dissolved partnership cannot bind the other members as to third parties who have notice of the dissolution. The Knaus case and the Seufert case so hold, and there are none to the contrary.

But the question respondents ruled was not whether the firm of Jacobs & Henderson was *bound* to a *third* party by an act of Jacobs, but the question was whether the payment of the fee to Jacobs was payment to the firm.

Not one of the cases cited by relator, Henderson, deals with such facts as here. So far as appears here, the lien of Jacobs & Henderson attached to the Nelson cause of action upon the commencement of the Nelson case. [Sec. 11716, R. S. 1929, Mo. Stat. Ann., sec. 11716, p. 630.] The petition was signed by Jacobs & Henderson hence the Massman Construction Company had notice of this lien when process was served. But the lien was then held *jointly*. Respondents' opinion says [120 S. W. (2d) l. c. 87]: "The appellant

(Massman Construction Company) herein presents what we consider to be a very pertinent question in the case at bar. The appellant urges that the obligation of Mr. Nelson was to a partnership or to joint obligees.

"*The law of this state is clearly to the effect that where several parties are jointly interested in an indebtedness, all are necessary parties to an action for recover.* [Peters v. McDonough, 327 Mo. 487, 37 S. W. (2d) 530.] (Italics ours.)

"The testimony of Mr. Nelson, the plaintiff in the original suit, is clearly to the effect that he hired Mr. Jacobs. However, he knew of the partnership, and the employment contract must be construed as between Mr. Nelson and the law firm of Henderson & Jacobs, and, as originally made, Mr. Jacobs and Mr. Henderson were joint obligees. . . . The respondent herein (Henderson) contends that the dissolution of the partnership, and the fact that only the services of Mr. Jacobs were thereafter retained, creates a situation wherein the obligation ceased to be a joint obligation.

"As to whether or not there was such a severance as to justify the position taken must be answered by the facts as they appear in the evidence. Most potent to the question is as to how Mr. Jacobs and Mr. Henderson, themselves, acted toward the matter.

"Mr. Henderson, for some reason unknown to us, was not called as a witness. However, in the testimony given by Mr. Jacobs, when being cross-examined by Mr. Deacy, it is clearly shown that the parties themselves treated all unfinished business as partnership business. It is shown that in similar matters, as are involved in the case at bar, the office of Mr. Henderson would collect the fees and remit to Mr. Jacobs his portion of same, and that the office of Mr. Jacobs would collect the fees in other cases and remit same.

"We conclude that the actions of both members of the dissolved law firm clearly justifies the conclusion that both Jacobs and Henderson treated the fees belonging to the firm at the time of dissolution as partnership business. There is no showing whatever to the effect of any agreement that certain fees would go to Henderson and other fees to Jacobs. This impels us to the conclusion that as to the fee herein involved Mr. Jacobs and Mr. Henderson were joint obligees."

Relator contends that the above italicized statement of the law is in conflict with the ruling in Priest v. Oehler et al., 328 Mo. 590, 41 S. W. (2d) 783. It is contended that the Henderson case was in equity, and that the law as stated by respondents has no application to an equity case. In the Priest case, the court said (41 S. W. (2d) l. c. 788): "Under this head appellants invoke the rule that one joint obligee, without the concurrence of his co-obligees, cannot maintain an action upon a joint contract. [Clark v. Cable, 21 Mo. 223.] The rule is applicable only in actions at law. In addition to the fact that

this is a suit in equity, the obligation of the contract running to plaintiff and defendants Cunliff and Smith is as to them several as well as joint; each has a several right to have it enforced. The point made as to nonjoinder of parties plaintiff is without substance.''

Relator misconstrues the Priest case. That case was correctly construed in Hamrick v. Lasky et al. (Mo. App.), 107 S. W. (2d) 201, l. c. 204:

''Plaintiff urges that our opinion is in conflict with Priest v. Oehler, 328 Mo. 590, 41 S. W. (2d) 783, l. c. 788. Plaintiff construes that case as holding that the rule that payment in full by the obligor to one of two joint obligees discharges the obligation is inapplicable in equity. It is obvious that the case does not so hold. What the case holds is that the rule that one of two joint obligees cannot, without the concurrence of the other, maintain an action on an obligation which has not been discharged by payment to the other, is inapplicable in equity. It merely announces a rule of procedure. It does not hold that, though one of two joint obligees cannot maintain an action at law on an obligation which has been discharged by payment to the other, he can maintain an action thereon in equity, and no case has been brought to our attention so holding.''

Relator cites no case, and we find none, to support conflict. We think that the writ in the Henderson case was improvidently issued and should be quashed. It is so order. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Hays, P. J.,* absent.

### On Motion to Tax Costs*

### —— S. W. (2d) ——

BRADLEY, C.—The opinion in the above consolidated causes (in certiorari) was handed down at the May Term, 1939, and is reported in 344 Mo. 1003, 130 S. W. (2d) 491. The purpose was to quash the record and opinion of the Kansas City Court of Appeals in Nelson v. Massman Construction Company et al., 120 S. W. (2d) 77. The opinion and judgment in cause No. 36,392 quashed, in part, the opinion and record in the Nelson case (120 S. W. (2d) 77) and the opinion and judgment in cause No. 36,396 quashed the writ issued in that case. The Massman Construction Company duly filed a motion to tax costs in both of the certiorari causes, Nos. 36,392 and 36,396.

By the motion in No. 36,392, the Massman Construction Company asks that the docket fee and the costs of printing the abstract be

---

*Note: Motion to tax costs filed at September Term, 1939, November 3, 1939.

taxed against Thomas E. Deacy who was the beneficiary of the judgment and opinion of the Court of Appeals. By the motion in cause No. 36,396, the Massman Construction Company asks that the cost of printing what is called a counter-abstract be taxed against Mitchel J. Henderson, who was the relator in that cause.

We will first consider the motion in case No. 36,392. Thomas E. Deacy, by his counsel, has filed suggestions in opposition to the motion to tax costs in No. 36,392. It is suggested that the certiorari proceeding, instituted by the Massman Construction Company, was an original proceeding, and was against the judges of the Kansas City Court of Appeals, and that he, Deacy, was not a party to such proceeding, and that in the situation this court has no power to tax costs against him. No authority is cited in support of the suggestions. Reference, however, is made to Section 1028, Revised Statutes 1929 (Mo. Stat. Ann., p. 1310). This section, among other things, provides that "if the abstract filed by the appellant or plaintiff in error be sufficient and correct, a reasonable charge therefor shall be taxed against the respondent or defendant or defendant in error, if he be the losing party." It will be observed that Section 1028 is no authority for taxing costs in a certiorari proceeding, since this section has reference only to appeals and writs of error. Certiorari, in the Supreme Court, to quash an opinion of a Court of Appeals, while usually considered as an *original* proceeding, is not entirely original as distinguished from the term *appellate*. "Certiorari is appellate in the sense that it involves a limited review of the proceedings of an inferior jurisdiction; it is original in the sense that the subject matter of the suit or proceeding which it brings before the court is not re-investigated, tried and determined on the merits generally, as on appeal at law or writ of error." [11 C. J. 90.] In certiorari to quash an opinion of a Court of Appeals the parties are not the same as the parties to the cause, or action determined by the Court of Appeals. Such proceeding (certiorari) is a new, distinct, and separate action from that decided by the Court of Appeals, and is not a continuation of the original suit or action decided by the Court of Appeals. [State ex rel. Jacobs v. Trimble et al., 310 Mo. 150, l. c. 155, 274 S. W. 1075.]

Section 3, Article VI of the Constitution provides: "The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same." Section 8 of the Amendment of 1884 provides: "The Supreme Court shall have superintending control over the courts of appeals by *mandamus*, prohibition and *certiorari*." Under these provisions and in a proper case, the Supreme Court has the power to quash the record and opinion of a Court of Appeals. [State ex rel. Curtis v. Broaddus et al., 238 Mo. 189, 142 S. W. 340.]

Sec. 1249, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1249, p. 1473), provides that "in all cases where either party shall sue out a *certiorari* upon any judgment where the same shall be allowed by law, the successful party in the superior court shall recover costs in both courts." What is now Section 1249 was enacted in 1835, Revised Statutes 1835, page 129, section 15. There were no court or Courts of Appeals, as we now have, when Section 1249 was first enacted. Then the only appellate court, superior to the circuit court, was the Supreme Court, but what is now Section 3, Article VI of the Constitution, set out, supra, was then a part of the Constitution. Section 1249, Revised Statutes 1929, is a part of Article XX, Chapter 5, Revised Statutes 1929, relating to costs, and for the most part, the article pertains to costs in the circuit court, but there is nothing in the article that would suggest that it is restricted to costs accruing in the circuit court. On the contrary, Section 1253 of the article provides for the recovery of costs in appeals and writs of error. Section 1249, providing for costs in certiorari is general in its scope and therefore not restricted to any particular certiorari proceeding.

In Hickman v. Hunter, Dist. Judge, 159 Iowa, 201, 140 N. W. 425, it appears that Hickman brought suit against William Bunch and wife. In that case the district court rendered a judgment against Hickman for $350 on a counterclaim which was filed in the cause after Hickman had dismissed his case. Hickman commenced certiorari in the Supreme Court and against the district judge who rendered the judgment to annul the judgment on the counterclaim in the district court. The judgment was annulled, and on the question of costs the court said: "It is claimed by plaintiff (Hickman) that the costs of this proceeding (certiorari) should be taxed to the defendants in the court below, William Bunch and Mrs. William Bunch. The defendant judge is, of course, not liable for costs. The defendants Bunch are not perhaps, in one sense, parties to this proceeding; but the attorneys for the defendant judge are the same attorneys who appeared in the court below for the defendants, Mr. and Mrs. Bunch, and they (the attorneys) are in this court seeking to sustain the judgment in favor of the said defendants. Under such circumstances, it has been held that they are the real parties in interest, and that the costs of this proceeding should go against them," citing Tiedt v. Carstensen, 64 Iowa, 131, 19 N. W. 885, and 6 Cyc. 837.

State ex rel. Snow Steam Pump Works et al. v. Homer, Judge (banc), 249 Mo. 58, 155 S. W. 405, was in prohibition to prohibit a circuit judge from proceeding in a cause. There language was used (249 Mo. l. c. 76) which we think quite pertinent here:

"It is so universally the practice in this State that the counsel for the prevailing party *nisi* represents the judge upon whom they have prevailed in the ruling and represent him because of the interest and employment of their clients, that we can well judiciously (judicially)

know this fact. In. the case at bar the very lawyers who represent relators in this suit represented them as defendants in the court *nisi,* and represented the judge in the mandamus suit. When representing the judge we have no doubt that they were acting for and in behalf of their clients and were at the time and in the mandamus case, in the pay of their clients, these relators. Relators were therefore real parties to the mandamus case, although not parties of record. A party to a proceeding does not have to be a party to such of record before being bound. His conduct in the case may make him such a party, though not of record, as to make the judgment *res adjudicata.* Such is the relation here, and for this reason these relators are estopped by the judgment in the mandamus case, and cannot have the relief now sought in the instant case.''

We rule that Deacy was *the* interested party respondent in the certiorari cause No. 36,392, and the fact that his name did not appear of record as a party respondent, should not make him immune from liability for the costs here sought. It must be conceded that he *appeared,* by counsel, in this court in said cause, and sought to uphold the opinion of the Court of Appeals. We think that the docket fee, $10, the marshal's fee, $18, and a reasonable amount, $60.75 for printing the abstract in cause No. 36,392 should, under Section 1249, Revised Statutes 1929, be allowed and taxed against Deacy, and it is so ordered.

By motion to tax costs, the Massman Construction Company asks that costs be taxed against Mitchel J. Henderson in the certiorari cause No. 36,396, for printing what is termed a counter-abstract. Henderson was relator in cause No. 36,396, the writ in which was quashed. Henderson printed in his abstract all the necessary record. The so-called counter-abstract is a copy of the abstract in the Nelson case (120 S. W. (2d) 77) in the Court of Appeals. That abstract was among the files in the return made by the Court of Appeals in response to the certiorari writ, and it was wholly unnecessary to reprint it.

The motion to tax costs for printing the so-called counter-abstract should be overruled, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.